ROSENBERG & ESTIS, P.C.
733 Third Avenue, 15th Floor
New York, New York 10017
John D. Giampolo, Esq.
Email: jgiampolo@rosenbergestis.com
Tel: (212) 551-1273

*Attorneys for 852 Eighth LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PORTOFINDOUGH, LLC, | : | Case No.: 23-11695 (MG) |
| | : | |
| Debtor. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MOTION OF LANDLORD, 852 EIGHTH LLC**
**FOR (I) AN ORDER ACKNOWLEDGING DEBTOR'S LEASE OF THE**
**NONRESIDENTIAL PREMISES TERMINATED AS OF THE PETITION DATE,**
**AND (A) CONFIRMING THE AUTOMATIC STAY DOES NOT APPLY TO STAY**
**LANDLORD FROM RECOVERING POSSESSION OF THE LEASED**
**PREMISES PURSUANT TO 11 U.S.C. § 362(B)(10), OR (B) MODIFYING THE**
**AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D) TO PERMIT LANDLORD**
**TO RECOVER POSSESSION OF THE LEASED PREMISES; OR, ALTERNATIVELY,**
**(II) AN ORDER COMPELLING REJECTION OF THE NONRESIDENTIAL LEASE TO**
**THE EXTENT IT IS DEEMED UNEXPIRED AS OF THE PETITION DATE; (III) AN**
**ORDER COMPELLING ALLOWANCE AND PAYMENT OF ALL UNPAID POST-**
**PETITION RENT, USE AND OCCUPANCY AND/OR OTHER CHARGES PURSUANT**
**TO 11 U.S.C. §§ 365(D)(3) AND 503(B)(1); (IV) ABANDONING ANY INTEREST OF**
**THE DEBTOR IN ANY PERSONAL PROPERTY LEFT ON THE PREMISES; (V)**
**MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D) TO**
**PERMIT LANDLORD'S APPLICATION OF THE SECURITY DEPOSIT, AND (VI)**
**WAIVER OF ANY STAY PERIOD**

852 Eighth LLC, as the landlord ("Landlord") under a Lease (as defined below) of the

commercial/nonresidential real property identified as all rooms, a portion of the ground floor level

and basement, as more particularly shown on the floor plan annexed to the Lease, in the building

located at 852 Eighth Avenue, New York, New York 10019 (the "Premises"), which the above-

captioned Debtor has been in possession as tenant and which Lease was terminated prior to the October 24, 2023 petition date (the "Petition Date"), hereby respectfully moves (the "Motion") this Court for (I) an order acknowledging Debtor's Lease of the nonresidential Premises terminated as of the Petition Date, and (A) confirming the automatic stay does not apply to stay Landlord from recovering possession of the nonresidential Premises pursuant to 11 U.S.C. § 362(b)(10), or (B) modifying the automatic stay pursuant to 11 U.S.C. § 362(d) to permit Landlord to recover possession of the nonresidential Premises; or, alternatively, (II) an order compelling rejection of the nonresidential Lease to the extent it is deemed unexpired as of the Petition Date; (III) an order compelling allowance and payment of all unpaid post-petition rent, use and occupancy and/or other charges pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1); (IV) abandoning any interest of the Debtor in any personal property left in the Premises; (V) modifying the automatic stay to permit Landlord's application of the security deposit; and (VI) waiving any stay period and providing for the terms of the order granting this Motion to take effect immediately upon entry. In support of this Motion, the Landlord respectfully submits the accompanying Declaration of Maidad Rabina ("Rabina Declaration") accompanying this Motion.

## PRELIMINARY STATEMENT

As set forth more fully below, on March 15, 2022, in breach of the Lease, Debtor caused a third party contractor to file a mechanic's lien against the Premises for Debtor's nonpayment of the initial construction costs at the Premises in the amount of $143,735.00 (the "Lien"). In further breach of the Lease, Debtor failed to indemnify Landlord for the Lien and foreclosure of same. On August 11, 2023 (the "Termination Date"), prior to the Petition Date, the Lease terminated and expired pursuant to the terms of the Lease. Since the Termination Date, Debtor has been holding over in possession of the Premises without Landlord's permission and continues to do so. On August 16, 2023, Landlord commenced a holdover proceeding (the "Eviction Action") to recover

possession of the Premises, which was stayed by this bankruptcy. To date, no monies for rent and/or use and occupancy have been received by Landlord for any period after the Termination Date for Debtor's continued possession of the Premises. No less than $120,149.52 is due and owing from Debtor to Landlord for rent and/or use and occupancy under the Lease for the period through and including the Petition Date (the "Pre-petition Arrears"). To be clear, such Pre-Petition Arrears are exclusive of the amount of the Lien against the Premises.

This Court should acknowledge that, as of the Petition Date, no Lease exists for the nonresidential Premises under applicable non-bankruptcy law. Therefore, this Court should confirm the automatic stay does not apply to stay Landlord from continuing its Eviction Action to recover possession of the Premises from the Debtor pursuant to Bankruptcy Code sections 541(b)(2), 362(b)(10) and 365(c)(3), or modify the automatic stay to permit Landlord to recover possession pursuant to Bankruptcy Code section 362(d), and abandon Debtor's interests in any personal property in Premises. Alternatively, to the extent this Court finds that, as of the Petition Date, the Lease was effectively reinstated and is deemed an unexpired lease, this Court should enter an order compelling rejection of the Lease pursuant to Bankruptcy Code section 365(d) to prevent further undue harm to the Landlord. Moreover, regardless of whether the Lease is deemed terminated or unexpired as of the Petition Date, this Court should enter an order compelling payment of all unpaid rent and/or use and occupancy and/or other charges for the post-petition period pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1) and grant relief from the automatic stay to permit Landlord's application of the $115,000.00 security deposit (the "Security Deposit") which was deposited with Landlord as collateral for Debtor's obligations under the Lease.

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are sections 362, 365, 507, and 521 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Bankruptcy Rules (the "Local Rules").

## RELEVANT FACTS AND PROCEDURAL HISTORY

3. The following is a summary of relevant facts and procedural history that is more fully set forth in the holdover petition (the "Holdover Petition") commencing the Eviction Action as well as in the supporting documents attached thereto, all of which are attached to the Rabina Declaration as **Exhibit A** and are incorporated herein by reference.

4. Debtor was the tenant of the Premises pursuant to a written lease agreement and rider thereto (the "Rider"), dated as of July 1, 2021, by and between the Landlord, as landlord, and Debtor, as tenant (the "Original Lease"), as modified by forbearance letter agreement, dated May 23, 2023 (the "Agreement", collectively, with the Rider and Original Lease, the "Lease"), true and correct copies of which are attached to the Rabina Declaration as **Exhibits B** and **C.**

***Debtor breached the lease causing a mechanics lien against the Premises, the Lease terminated and expired before the Petition Date, and Debtor has not paid rent or use and occupancy for months***

5. The following is set forth more fully in the Holdover Petition commencing the Eviction Action.

6. On March 15, 2022, in breach of the Lease, Debtor caused a third party contractor to file the Lien against the Premises for work claimed to have been done for and at the direction of the Debtor and for which Debtor failed to pay. See Exhibit B to the Holdover Petition.

7.    In further breach of the Lease, Debtor failed to indemnify Landlord for the Lien and foreclosure of same.  See Exhibit B to the Holdover Petition.

8.    The Lease terminated and expired on the August 11, 2023 Termination Date, pursuant to the terms of the Lease, for the reasons set forth in: (a) the Fifteen (15) Day Notice of Default, dated July 12, 2023 (the "Default Notice"); and (b) the Five (5) Day Notice of Termination of Lease, dated August 2, 2023 (the "Termination Notice"), copies of which are annexed to the Holdover Petition, together with proof of service thereof, as Exhibit B and Exhibit C, respectively, to the Holdover Petition and are incorporated by reference as if fully set forth herein.  See Holdover Petition ¶ 6.

9.    Since the Termination Date, Debtor has been holding over in possession of the Premises without Landlord's permission and continues to do so.

10.    On August 16, 2023, Landlord commenced the Eviction Action to recover possession of the Premises, which was stayed by this bankruptcy on the eve of the trial of the Eviction Action.

11.    To date, no monies for rent and/or use and occupancy have been received by Landlord for the period after the Termination Date for Debtor's continued possession of the Premises.

12.    Pursuant to the Lease, Landlord owns the following items of furnishings, fixtures and equipment and grants Debtor permission to use same at the Premises: 2 Refrigerated Pizza Tables, 1 Oven Pizza and Hood, 1 Walk in Freezer/Refrigerator, 1 Dough Mixer, 1 Large Metal Table, 1 Medium Metal Table, 1 Triple sink, 2 Small sinks, 5 AC units, 1 Metal Wall Shelf, 5 Metal Shelves ("Landlord's FF&E").  Furthermore, by operation of the Lease, any additional

personal property remaining in the Premises following the Termination Date transferred to the Landlord.

13.     No less than $120,149.52 of Pre-petition Arrears are due and owing from Debtor to Landlord for rent and/or use and occupancy under the Lease for the period through and including the Petition Date.

14.     The Lease requires payment of no less than $26,000.00 for monthly rent (or value of monthly use and occupancy) for the Premises, plus utilities and other items of additional rent in accordance with the terms and conditions of the Lease.

15.     To date, Debtor has paid no amount of post-petition rent or use and occupancy for the post-petition stub period in October 2023 or for the post-petition month of November 2023.

16.     Landlord is currently holding a Security Deposit in the amount of $115,000.00 which was deposited with Landlord as collateral for Debtor's obligations under the Lease.

17.     The Landlord has been and continues to be unduly burdened by: (a) the Lien that Debtor caused to be filed against the Premises, (b) by legal fees and expenses incurred in defending the Supreme Court Action entitled *NYC Prestige Mechanical, Corp. v. Medhat Ahmed et al*, Sup. Ct. N.Y Co., Index No. 652659/2022, which was commenced by the contractor to foreclose upon the Lien, and (c) by Debtor's continued possession of the Premises without paying rent or use and occupancy.  Attached as **Exhibit D** to the Rabina Declaration is a ledger setting forth all amounts, in addition to the Lien, of unpaid rent and/or use and occupancy, as well as all legal fees, expenses and other charges that the Landlord incurred prior to the Petition Date due to Debtor's foregoing breaches of the Lease.

18.     Accordingly, Landlord is not adequately protected as post-petition rent or use and occupancy is not being paid and the Security Deposit is insufficient.  Even if the automatic stay is

modified to permit Landlord to apply the $115,000.00 Security Deposit, the Pre-petition Arrears are no less than $120,149.52, plus post-petition rent or use and occupancy is no less than $26,000.00 per month, plus the cost of the Lien in the amount of $143,735.00.

## RELIEF REQUESTED AND BASIS THEREFOR

19. By this Motion, the Landlord moves this Court for (I) an order acknowledging Debtor's Lease of the nonresidential Premises terminated as of the Petition Date, and (A) confirming the automatic stay does not apply to stay Landlord from recovering possession of the nonresidential Premises pursuant to 11 U.S.C. § 362(b)(10), or (B) modifying the automatic stay pursuant to 11 U.S.C. § 362(d) to permit Landlord to recover possession of the nonresidential Premises; or, alternatively, (II) an order compelling rejection of the nonresidential Lease to the extent it is deemed unexpired as of the Petition Date; (III) an order compelling payment of all unpaid post-petition rent, use and occupancy and/or other charges pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1); (IV) abandoning any interest of the Debtor in any personal property left in the Premises; (V) modifying the automatic stay to permit Landlord's application of the security deposit; and (VI) waiving any stay period and providing for the terms of the order granting this Motion to take effect immediately upon entry.

**A.    *The Automatic Stay Does Not Apply to Stay Ejectment of Debtor, Pursuant to 11 U.S.C. §§ 541(b)(2), 362(b)(10) and 365(c)(3), Because as of the Petition Date the Lease Terminated and Debtor Had No Lease in the Nonresidential Premises***

20. Bankruptcy Code sections 541(b)(2), 362(b)(10) and 365(c)(3) are consistent in that any leasehold or possessory interest in nonresidential real property is not property of the debtor's bankruptcy estate or entitled to protection of the automatic stay where no lease exists under applicable non-bankruptcy law as of the petition date.

21. Bankruptcy Code section 541(b)(2) states in relevant part:

(b) Property of the estate does not include—... does not operate as a stay--…

(2) *any interest* of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease ....

11 U.S.C. § 541(b)(2) (emphasis supplied).

22.    Bankruptcy Code section 362(b)(10) states in relevant part:

The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

(10) under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property[.]

11 U.S.C. § 362(b)(10).

23.    Bankruptcy Code section 365(c)(3) provides that the "trustee [or debtor] may not assume or assign any ... unexpired lease of the debtor ... if ...(3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3); *see In re Scarsdale Tires Inc.*, 47 B.R. 478, 480 (S.D.N.Y.1985) ("*It is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. § 362(a) nor may it be assumed by the debtor under 11 U.S.C. § 365*") (emphasis added).

24.    Here, Debtor's alleged Lease for the Premises is not affected by the automatic stay because it was terminated and expired prior to the Petition Date.

25.    As it is well settled and recognized, "[t]he language of Section 362(b)(10) clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under a lease of non-residential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title [and] [t]he landlord may do whatever is necessary and appropriate under

state law to obtain possession of such property." *In re Neville*, 118 B.R. 14, 18 (Bankr. EDNY 1990) (citing 11 U.S.C. § 362(b)(10)) (internal citations omitted).

26.     It is also well settled that section 362(b)(10) applies not only when a lease expires by the end of its term but also in any scenario where the lease is deemed terminated or nonexistent under applicable nonbankruptcy law.   In *Neville,* where the nonresidential lease terminated prepetition by serving a notice of default and termination in accordance with the lease terms (not by expiration of the lease term), the Court found that the debtor's lease had terminated prepetition within the meaning of section 362(b)(10).  *In re Neville*, 118 B.R. at 15-16.

27.     In *Policy Realty Corp.,* where, similar to *Neville,* the leases terminated by operation of a conditional limitation whereby the landlord sent the tenant in default a notice of lease termination (not by expiration of the lease term), the Court also found the debtor's lease terminated within the meaning of section 362(b)(10).   *In re Policy Realty Corp.,* 242 B.R. 121, 127-128 (S.D.N.Y.1999) (internal citations omitted).

28.     As the District Court recognized in *Policy Realty Corp.,* the Bankruptcy Code directs that the question of "termination" is to be resolved by reference to "applicable nonbankruptcy law" which, in this context, is state law.  *In re Policy Realty Corp.,* 242 B.R. at 127–128 (reversing the Bankruptcy Court), aff'd, 213 F.3d 626 (2d Cir.2000) (citing 11 U.S.C. § 365; *In re Air Vectors Associates*, 53 B.R. 668, 685 (Bankr. S.D.N.Y.1985); *In re Memphis-Friday's Assoc.*, 88 B.R. 830, 833-834 (Bankr. W.D.Tenn.1988)).   Accordingly, the Court in *Policy Realty Corp.* recognized that a lease may be "terminated by the expiration of the stated term" under New York law, and within the meaning of Bankruptcy Code section 362(b)(10), by operation of the lease terms including by serving a notice of default and lease termination.  *In re Policy Realty Corp.,* 242 B.R. at 128 (interpreting 11 U.S.C. § 362(b)(10)) (citing *In re Musikahn*

*Corp.,* 57 B.R. 938, 940 (Bankr. E.D.N.Y. 1986; *In re West Pine Construction Co.,* 80 B.R. 315, 319-20 (Bankr. E.D.Pa. 1987) ("holding that phrase 'stated term' includes in its scope leases that have been terminated as a result of acceleration due to defaults.")); *see also In re Truong*, 557 B.R. 326, 334 (Bankr. D.N.J. 2016) (finding the Debtor's "Lease was also terminated prepetition on March 31, 2016 by the Termination Notice so the same result obtains here: the eviction proceedings against the Debtor are not stayed, and the Debtor's interest in the Lease and Leased Premises (if any) is not property of the estate.").

29.     Citing the decisions in *Policy Realty Corp.,* and *Neville*, the Bankruptcy Court in *Truong* looked to applicable New York State Court decisions to confirm that termination of a lease "forecloses the debtor's interest in the premises without further action." *In re Truong*, 557 B.R. at 334 (citing *Little v. Bright Holding Corp.,* 155 Misc.2d 686, 687–88, 589 N.Y.S.2d 722 (N.Y.Civ.Ct.1992) ("a debtor-tenant at sufferance who refused to vacate the premises had no interest which the stay could protect in bankruptcy") (internal citations omitted)).

30.     Here, the Debtor's interest in the Premises is akin to that of a tenant at sufferance who refuses to vacate since the Lease terminated back in August 2023 and immediately prior to the Petition Date.  Landlord showed Debtor extreme patience by allowing it ample opportunity to resolve the Lien from the date that it was placed against the Premises (March 15, 2022) to the date that Landlord terminated the Lease therefor (August 11, 2023).

31.     Debtor was facing a judgment at an October 25, 2023 trial date in the Eviction Action where Landlord would have been awarded possession.  That is likely the reason why Debtor filed bankruptcy on the Petition Date to avoid or delay a judgment of possession in bad faith while Debtor continues to occupy the Premises without a valid lease and without paying prepetition or post-petition rent or use and occupancy, and while the Premises continues to be saddled with the

Lien. Thus, the Debtor does not have any valid legal interest in the Premises which the stay could protect in bankruptcy because, as of the Petition Date, the Lease was validly terminated.

32. In each of the *Policy Realty Corp., Neville*, and *Truong* decisions the Court rejected the argument that a debtor's "mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay". *In re Policy Realty Corp.,* 242 B.R. at 129 ("Policy's claim of an equitable possessory interest is insufficient to trigger the protection of the automatic stay.") (" 'It would be chaotic if every non-residential lease termination could ultimately be frustrated by the last minute filing of a Chapter 11 proceeding in federal court.' ") (citing *In re Jarman,* 118 B.R. 380, 382 (Bankr.D.S.C.1989); *see also In re Neville*, 118 B.R. at 18 ("[t]he Debtor's naked possessory interest, if any, has no value to this Debtor's estate, and to reimpose a stay against the Landlord would not benefit this Debtor's estate.") ("for this court to accept Debtor's argument that `his equitable possessory interests were protected by the automatic stay' would result in nullifying Section [§] 362(b) (10) which was purposely placed into the Bankruptcy Code to deal with situations such as these."); *In re Truong*, 557 B.R. at 334 ("The debtor's mere 'possession' of the premises gave rise to no right which could be protected under the [Bankruptcy] Code".) (citing *In re Neville*, 118 B.R. at 15-16 and *In re Policy Realty Corp.,* 242 B.R. at 127–128).

33. The *Truong* Court clarified that any decisions to the contrary were distinguishable because they were "based on a bankruptcy case filed before the 1984 effective date of 11 U.S.C. §§ 362(b)(10) and 541(b)(2), which clarify that a debtor has no residual interest in a nonresidential lease which expires prepetition." *In re Truong*, 557 B.R. at 335-336 (distinguishing decisions in *In re Mad LO LO LLC*, 2009 WL 2902567 at *1, *3 (Bankr.S.D.N.Y. May 28, 2009) and *In re Sweet N Sour 7th Ave. Corp.,* 431 B.R. 63, 67–69 (Bankr.S.D.N.Y.2010) as based upon *In re 48th*

*Street Steakhouse, Inc.,* 835 F.2d 427, 430 (2d Cir.1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988) which was filed before the 1984 effective date of 11 U.S.C. §§ 362(b)(10) and 541(b)(2)).

34.     As above, in the case at hand, the Debtor's alleged Lease for the nonresidential Premises clearly terminated prior to the Petition Date under New York law and within the meaning of Bankruptcy Code section 362(b)(10) and therefore ejectment or any act to remove Debtor from the Premises is not stayed and Debtor's bare possessory interest in the Premises is not property of the estate.

**B.     Even if the Stay Applies to Ejectment, Cause Exists to Grant Relief from Stay to Allow Ejectment of Debtor from the Nonresidential Premises for Which Debtor Is Not Paying Post-Petition Obligations And Has No Valid Lease Pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2)**

35.     Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> (d)     On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay—
>
> > (1)     for cause, including the lack of adequate protection of an interest in property of such party in interest; or
> >
> > (2)     with respect to a stay of an act against property under subsection (a) of this section, if:
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization.

11 U.S.C. §362(d); *see also In re Thomas*, No. 14–11738 (MG), 2017 WL 123746, at *2 (Bankr. S.D.N.Y. Jan. 5, 2017) ("Sections 362(d)(1) and (d)(2) are disjunctive.  This means that the Court must lift the stay if the movant prevails under either of the two grounds.").

36.     Here, to the extent it is necessary, cause clearly exists to modify the automatic stay to permit the relief sought in this Motion pursuant to both or either of section 362(d)(1) and 362(d)(2).

*Grounds for Relief from the Automatic Stay – Section 362(d)(1)*

37.     Section 362 of the Bankruptcy Code does not describe the boundaries of "adequate protection" under section 362(d)(1) but section 361 provides examples of what constitutes adequate protection. 11 U.S.C. § 361. *See In re P.J. Clarke's Restaurant Corp.,* 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001).  These examples include "periodic cash payments" to protect against any decrease in the value of a party's interest in property or against any costs incurred by a party for its interest in that property. 11 U.S.C. § 361(1).  Several courts have held that "a Landlord's right to timely payment of post-petition rent is an interest in property entitled to adequate protection." *In re P.J. Clarke's Restaurant Corp.,* 265 B.R. at 404 (citing *In re MS Freight Distribution, Inc.,* 172 B.R. 976, 980 (Bankr.W.D.Wash.1994) ("landlord's right to be kept current on post-petition obligations is entitled to adequate protection") (internal citations omitted)); *see also Oligbo v. Louis (In re Oligbo)*, 328 B.R. 619, 651 (Bankr. E.D.N.Y. 2005).

38.     Here, as of the date of this Motion, the Debtor has failed and continues to fail to pay the movant Landlord for the post-petition stub period in October 2023 and for the month of November 2023 for use and occupancy of the nonresidential Premises which Debtor has and continues to occupy.  Accordingly, as above, the Landlord's interest in the Premises is not adequately protected and the Landlord has established cause for relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(1).

*Grounds for Relief from the Automatic Stay – Section 362(d)(2)*

39.     Section 362(d)(2) of the Bankruptcy Code provides that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . if – (A) the

debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . . ." 11 U.S.C. § 362(d)(2). Both elements of Section 362(d)(2) must be satisfied in order for the court to grant relief from the automatic stay. *See Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.),* 101 F.3d 882, 886 (2d Cir. 1996); 3 COLLIER ON BANKRUPTCY ¶ 362.07[4] (15th ed. rev. 2007).

40. A debtor has no equity in a property where debtor's license or lease to occupy the property has terminated and debtor does not have any property interest. *See In re Owens*, 30 B.R. 399, 403 (Bankr. S.D.N.Y. 1983) ("[A] debtor can have no equity in an expired lease nor can it be considered necessary to an effective reorganization."). And the Supreme Court has held that property is only necessary to an effective reorganization where there is a "reasonable prospect for a successful rehabilitation within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* Ltd., 484 U.S. 365, 376 (1988) (quotation omitted). The Supreme Court further stated that "[w]hat [Section 362(d)(2)(B)] requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect." *Timbers,* 484 U.S. at 475-76.

41. As set forth above, as of the Petition Date, Debtor's Lease was terminated therefore Debtor can have no equity in any lease or leasehold interest for the Premises nor can it be considered necessary to an effective reorganization. Accordingly, the Landlord has established cause for relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(2).

42. Moreover, upon finding that the automatic stay does not apply, or that it should be modified, to allow removal of the Debtor from the Premises under the terminated Lease, this Court should also direct the Debtor to surrender possession of the Premises to the Landlord consistent

with Bankruptcy Code section 365(d)(4)(A) which provides that, where a nonresidential real property lease is deemed rejected, and "the trustee [or debtor] shall immediately surrender that nonresidential real property to the lessor."

43. Finally, any personal property of the Debtor left in the Premises should be deemed abandoned by the Debtor and its estate. Any stay period should be waived providing for the terms of the order granting this Motion to take effect immediately upon entry.

**C.     Alternatively, to the Extent the Lease Is Deemed Unexpired as of the Petition Date, an Order Should Be Entered Compelling Rejection of the Nonresidential Lease**

44. To the extent the Lease is not deemed terminated as of the Petition Date, this Court should enter an order compelling rejection of the Lease.

45. Under Bankruptcy Code section 365(d)(4)(A), the debtor or trustee has 120 days after the Petition Date to assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee or the lease shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor. 11 U.S.C. § 365(d)(4)(A).

46. But on request of the non-debtor party to the lease, the court may order the debtor to assume or reject the lease within a specified "reasonable time". *See*, *e.g.*, *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (granting a motion to compel the debtor to assume or reject a contract within a specified time period where the circumstances warranted a determination "at the earliest possible date").

47. While Section 365(d) is intended to give a debtor some "breathing room" by allowing reasonable time within in which to decide whether assumption or rejection of an executory contract is appropriate, such breathing room is not "without limits". *In re Adelphia Comm. Corp.,* 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003) (quoting *In re Enron Corp.,* 279 B.R.

695, 702 (Bankr. S.D.N.Y. 2002)); *see also In re Braniff, Inc.,* 118 B.R. 819, 845 (Bankr. M.D. Fla. 1990) (citations omitted).

48.     What constitutes a "reasonable time" is left to the bankruptcy court's discretion in light of the circumstances of the particular case. *See, e.g., Hawker Beechcraft,* 483 B.R. at 429. In exercising that discretion, courts consider a variety of factors including, among others, (i) the nature of the interests at stake; (ii) the balance of the harm to the litigants; (iii) the good to be achieved; (iv) the safeguards afforded the litigants; (v) the debtor's failure or ability to satisfy post-petition obligations; and (vi) the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code. *See id.* (quoting *In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003)); *see also In re Enron Corp.,* 279 B.R. 695, 702-703 (Bankr. S.D.N.Y. 2002) (citing *Theatre Holdings Corp. v. Mauro,* 681 F.2d 102, 105 (2d Cir. 1982)); *South Street Seaport Limited Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755 (2d Cir. 1996).

49.     As the Court explained in *In re Enron Corp.,* 279 B.R. 695, 702-704 (Bankr. S.D.N.Y. 2002), the foregoing factors are relevant to determining whether to compel rejection or assumption of executory contracts, unexpired residential leases, and unexpired nonresidential leases.

50.     Here, even to the extent that the Lease is not deemed terminated as of the Petition Date, the foregoing factors weigh in favor of compelling rejection of it. Regarding "the debtor's failure or ability to satisfy post-petition obligations", as above, the Debtor still has not satisfied the Lien nor has Debtor paid any rent or use and occupancy for the post-petition period.

51.     Under Bankruptcy Code section 365(d)(3), the trustee or debtor "shall timely perform all the obligations of the debtor … arising from and after the order for relief under any

unexpired lease of nonresidential real property, until such lease is assumed or rejected [and] [t]he court may extend, *for cause*, the time for performance of any such obligation that arises within 60 days after the date of the order for relief …." 11 U.S.C. § 365(d)(3). Here, Debtor filed bankruptcy October 24, 2023 and still hasn't paid rent or use and occupancy for the post-petition period. As of the date of this Motion, it will soon have exceeded 60 days from the Petition Date and Debtor has shown no cause nor even sought Court approval for an extension of its time to pay such post-petition obligations nor is there any justification for extension.

52.     Landlord is ready and willing to take possession of the Premises to rent it out to a new tenant, thereby potentially mitigating Landlord's damages and reducing the estate's liability for accruing post-petition use and occupancy.

53.     Regarding "the balance of the harm to the litigants", "the safeguards afforded the litigants" and "the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code", those factors also weigh in favor of compelling rejection of the Lease and surrender of the Premises to the Landlord. As above, for years the Landlord has been and continues to be unduly burdened by Debtor's foregoing breaches of the Lease and by Debtor's failure to pay rent or use and occupancy.

54.     The foregoing not only has and continues to cause Landlord substantial financial hardship but also jeopardizes the Premises. All while Debtor continues using the Premises to operate its business at the Landlord's expense.

55.     To the extent this Court does not acknowledge that the Lease terminated as of the Petition Date and does not compel immediate rejection of the Lease and surrender of the Premises, this Court should at least compel the Debtor to (i) reject the Lease and surrender the Premises, or (ii) assume the Lease and cure all Pre-petition Arrears and post-petition arrears, no later than three

months after the Petition Date to mitigate the substantial and ongoing hardship to the Landlord. *See, e.g., In re Adelphia Comm. Corp.,* 291 B.R. at 299 (holding 3 months to be a reasonable period); *In re The Travelot Co.,* 286 B.R. 462 (S.D. Ga. 2002) (holding 6 months to be a reasonable period); *In re Flying W. Airways, Inc.,* 328 F.Supp.1256 (E.D. Pa. 1971) (holding 3 months to be a reasonable time period).

56.     Furthermore, any order compelling rejection of the Lease should also provide that Landlord's FF&E shall remain, and any other personal property in the Premises should be deemed abandoned to the Landlord.

57.     Bankruptcy Code section 554(b) provides that, on request of a party in interest, the Court may order a trustee or debtor-in-possession "to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b); *cf. In re Burke*, 863 F.3d 521, 525 (6th Cir. 2017) (a trustee or debtor-in-possession "must generally abandon property that does not possess substantial equity.").

58.     Here, Landlord's FF&E has great value to Landlord's ability to market the Premises to an incoming tenant.  Furthermore, any personal property in the Premises either belongs to the Landlord or has a de minimis value and would burdensome and/or of inconsequential value to the Debtor's estate and therefore should be deemed abandoned upon entry of the order granting this Motion.

**D.      *An Order Should be Entered Allowing and Compelling Payment of Landlord's Claim for Unpaid Post-Petition Use and Occupancy at the Monthly Rate of $26,000***

59.     Regardless of whether the Court grants any of the other foregoing relief, an order should be entered allowing and compelling payment of Landlord's claim for unpaid post-petition use and occupancy at the monthly rate of $26,000.00 (which Debtor agreed to under the Lease), as well as for any other unpaid charges under the Lease and applicable law accrued and accruing

from Debtor's post-petition occupation of the Premises, as an administrative expense priority claim (the "Administrative Claim") pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1).

60.     The Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(B)(1)(A).

61.     As above, Bankruptcy Code section 365(d)(3) requires the debtor or trustee to "timely perform all the obligations of the debtor" arising from and after the petition date under an expired lease until it is rejected. 11 U.S.C. § 365(d)(3). Consistent with the provisions of Bankruptcy Code sections 365(d)(3), 503(b)(1)(A) and 507(a)(2), if the Court deems that the Lease is not terminated as of the Petition Date, the Court must still require the Debtor's estate to pay the Administrative Claim on an administrative expense basis. *See, e.g., In re Goody's Family Clothing Inc.,* 610 F.3d 812, 818 (3d Cir. 2010) (recognizing that "[w]hen a debtor [or its estate] occupies post-petition non-residential space it leases," the landlord is entitled to seek payment for the post-petition occupancy under both sections 365(d)(3) and 503(b)(1)).

62.     Even if the Court recognizes Debtor's Lease on the Premises was terminated as of the Petition Date, Landlord's Administrative Claim is still entitled to allowance and payment as an administrative expense claim. Courts routinely allow administrative claims for post-petition occupancy and use of real property by a debtor as an actual, necessary cost of preserving the estate even if the debtor has already rejected the applicable lease or the lease expired pre-petition. The fact that, under section 365(g)(1), the rejection of a lease constitutes a breach of the lease immediately before the date of the filing of the petition is of no moment as to whether a debtor may be liable for an administrative claim for post-petition use and occupancy of the premises. *See*

*Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir. 1990) (allowing administrative claim for post-petition use and occupancy of premises by debtor under expired lease).

**E.    *Relief from Automatic Stay to Permit Application of Security Deposit***

63.    This Court should modify the automatic stay to permit application of the Security Deposit to arrears and any lease rejection damages.  *See e.g., In re Watkins*, 2008 WL 708413; *In re Mad Lo Lo LLC d/b/a Frederick's Madison*, 2009 WL 2902567 at *4 (citing *In re Taylor*, 1997 WL 642559 at *1).   While Landlord's holding or application of any security deposit would not constitute adequate protection under 11 U.S.C. § 362(d)(1) because it does not cover all or most of Debtor's unpaid use and occupancy charges accrued after the Petition Date, it provides Landlord some equitable relief.   Landlord is appropriately filing the instant motion to lift the stay before it applies any security deposit. *In re Sweet N Sour 7th Ave Corp.*, 431 B.R. 63, 72 (Bankr. S.D.N.Y. 2010).

64.    Debtor's continued occupation of the Premises will only increase Debtor's post-petition liability to Landlord and place Landlord in a long line of additional unsecured creditors with uncertain prospects of recovery.   To the extent the Court is inclined to permit application of the Security Deposit, judicial economy militates towards resolving this issue in Landlord's favor as well and deeming any of Debtor's remaining personal property at the Premises abandoned free and clear of any rights, liens or claims of third parties.

## **RESERVATION OF RIGHTS**

65.    Landlord reserves the right to amend and/or supplement this Motion.

## **NOTICE**

66.    A copy along with notice of this Motion has been provided to (i) counsel to the Debtor; (ii) counsel to the Office of the United States Trustee; and (iii) all creditors and parties

that have requested pursuant to Bankruptcy Rule 2002 to receive notices in this case. Landlord submits that, under the circumstances, such notice constitutes good and sufficient notice of this Motion and no other or further notice need be given.

67. No prior request for the relief sought in this Motion has been made to this Court or to any other court.

## CONCLUSION

WHEREFORE, Landlord respectfully requests that the Court grant this Motion for this Court for (I) an order acknowledging Debtor's Lease of the nonresidential Premises terminated as of the Petition Date, and (A) confirming the automatic stay does not apply to stay Landlord from recovering possession of the nonresidential Premises pursuant to 11 U.S.C. § 362(b)(10), or (B) modifying the automatic stay pursuant to 11 U.S.C. § 362(d) to permit Landlord to recover possession of the nonresidential Premises; or, alternatively, (II) an order compelling rejection or assumption of the nonresidential Lease to the extent it is deemed unexpired as of the Petition Date; (III) an order compelling allowance and payment of all unpaid post-petition rent, use and occupancy and/or other charges pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1); (IV) abandoning Debtor's interest in any personal property left in the Premises; (V) modifying the automatic stay to permit Landlord's application of the security deposit; and (VI) waiving any stay period and providing for the terms of the order granting this Motion to take effect immediately upon entry.

Respectfully submitted,

Dated: New York, New York
       December 1, 2023

**ROSENBERG & ESTIS, P.C.**
*Attorneys for 852 Eighth LLC*

By:    */s/ John D. Giampolo*

       John D. Giampolo

733 Third Avenue
New York, New York 10017
Tel: (212) 551-1273