# <u>EXHIBIT B</u>

> **STANDARD FORM OF STORE LEASE**
> The Real Estate Board of New York, Inc.

7/04

Agreement of Lease, made as of this  **1st**  day of **July**  in the year  **2021**  , between
852 Eighth, LLC, c/o Geral Associates, LLC, 505 Fifth Avenue, New York, New York 10017 party of the first part,
hereinafter referred to as OWNER, and

Portofindough, LLC, 852 Eighth Avenue, New York, New York 10019
party of the second part, hereinafter referred to as TENANT,

Witnesseth: Owner hereby leases to Tenant and Tenant hereby hires from Owner
A Portion of Ground Floor and Basement as set forth in cross-hatched annexed hereto

in the building known as 852 Eighth Avenue, New York, New York
in the Borough of  Manhattan  , City of New York, for the term of  twelve (12) years

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
day of  in the year  2021  , and to end on the
day of  in the year  2033  , and
both dates inclusive, at the annual rental rate of  see paragraph 41 of Rider to Lease

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues,
public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during
said term, at the office of Owner or such other place as Owner may designate, without any setoff or deduction whatsoever,
except that Tenant shall pay the first  monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the
payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner
may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent
payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributes, executors, administrators, legal representative, successors
and assigns, hereby covenant as follows:

Rent:          1. Tenant shall pay the rent as above and as hereinafter provided.
Occupancy:     2. Tenant shall use and occupy the demised premises for  see paragraph 43 of Rider to Lease

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and
shall keep show windows and signs in a neat and clean condition.

Alterations:
3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, commercial general liability, personal and property damage insurance as Owner may require. If an mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense.

Repairs:
4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereinafter in Article 8. Tenant shall, throughout the term of the lease, take good care of the demised premises (including, without limitation, the storefront) and

the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

Window Cleaning:
5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

Requirements of Law, Fire Insurance:
6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violations, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner, or

which shall or might subject Owner to any liability or responsibility to any person, or for property damage. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease, or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or the demised premises issued by a body making fire insurance rates applicable to said demised premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate than applicable to said demised premises.

Sub-ordination:  **7.** This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

Tenant's Liability Insurance Property Loss, Damage, Indemnity:  **8.** Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of, or damage to, any property of Tenant by theft or other wise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building, or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain commercial general liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession of the demised premises and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such po1cy or policies and charge the Tenant as additional rent therefore. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damage, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys' fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease or by the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

Destruction, Fire, and Other Casualty:  **9.** (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other c sualty, the damages thereto shall be repaired by and at the expense of Owner, and the rent and other items of additional rent until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the demised premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by the Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall fo thwith quit, surrender and vacate the demised premises without prejudice however, to Owner's rights and remedies against Tenant under the lease pr visions in effect prior to such termination, and any rent owing shall be paid up to su e date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the demised premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other

casualty. Notwithstanding anything contained to the contrary in subdivisions (a) through (e) hereof, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible, and to the extent permitted by law, Owner and Tenant each hereby release and waves all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other, or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

Eminent Domain:  **10.** If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding, and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term, and provided further such claim does not reduce Owner's award.

Assignment, Mortgage, Etc.:  **11.** Tenant, for itself, its heirs, distributes, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part the eof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority interest in any partnership or other legal entity which is tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody othe than Tenant, Owner may, after default by Tenant, collect rent from the assignee, undertenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any way be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

Electric Current:  **12.** Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation, and Tenant may not use any electrical equipment which, in Owner's opinion, reasonable exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no way make Owner liable or responsible to Tenant, for any loss, damages or expenses wh Tenant may sustain.

Access to Premises:  **13.** Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable in any portion of the building or which Owner may elect to perform, in the demised premises, following Tenant's failure to make repairs or perform any week which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes, ducts, and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction, nor shall the Tenant be entitled to any abatement of rent while such work is in progress, nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants, and may, duxing said six months period, place upon the demised premises the usual notice "to Let" and "For Sale", which notices Tenant shall, permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible, by master key or forcibly, and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render owner or its agent liable therefore, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation, and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefore, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other

✍ Rider to be added if necessary

public parts of the building, and to change the name, number or designation by which the building may be known. . . . .

**Vault,**
**Vault Space,**
**Area:** 14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by, any federal, state or municipal authority or public utility, Owner shall not be subject to any liability, nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault area shall be paid by Tenant.

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant had inspected the demised premises and accepts them "as-is", subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises, and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant (or a guarantor of any of Tenant's obligations under this lease) as the debtor; or (2) the making by Tenant (or a guarantor of any of Tenant's obligations under this lease) of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the demised premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant, as and for liquidated damages, an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If the demised premises, or any part thereof, be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the demised premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property, whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall have failed, after five (5) days written notice, to redeposit with Owner any portion of the security deposit hereunder which Owner has applied to the payment of any rent and additional rent due and payable hereunder, or if Tenant shall be in default with respect to any other lease between Owner and Tenant; or if Tenant shall fail to move into or take possession of the demised premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) day notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced during such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner, but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required; then, and in any of such events, Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of the demised premises, and remove their effects and hold the demised premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner, as liquidated damages, for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorney's fees, brokerage, advertising and for keeping the demised premises in good order, or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable, in any way whatsoever, for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under, or by virtue of, any of the terms or provisions in any article of this lease, after notice if required, and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately, or at any time thereafter, and without notice, perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding, and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefore, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representations by Owner:** 20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the demised premises, except as herein expressly set forth, and no right, easements or licenses are acquired by Tenant by implication or otherwise, except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as-is", and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, "broom-clean", in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday, unless it be a legal holiday, in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the demised premises ready for occupancy, or because of the fact that a certificate of occupancy has not been procured, or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any way to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except the obligation to pay the fixed annual rent set forth in page one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of the demised premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of the demised premises prior to the termination of the lease, and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the demised premises.

**Waiver of Trial by Jury:** 25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of, or in any way connected with, this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of the demised premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commence any proceeding or action for possession, including a summary proceeding for possession of the demised premises, Tenant will not set up any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4, except for statutory mandatory counterclaims.

**Inability to Perform:** 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no way be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease, or to supply, or is delayed in supplying, any service expressly or impliedly to be supplied, or is unable to make, or is delayed in making, any repair, additions, alterations or decorations, or is unable to supply, or is delayed in supplying, any equipment, fixtures or other materials, if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions, or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency, or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27. Except as otherwise in this lease provided, any notice, statement, demand or other communication required or permitted to be given, rendered or made by either party to the other, pursuant to this lease or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this lease) and shall be deemed to have been properly given, rendered or made, if sent by registered or certified mail (express mail, if available), return receipt requested, or by courier guaranteeing overnight delivery, and furnishing a receipt in evidence thereof, addressed to the other party at the address hereinabove set forth (except that after the date specified as the commencement of the term of this lease, Tenant's address, unless Tenant shall give notice to the contrary, shall be the building), and shall be deemed to have been given, render d or made (a) on the date delivered, if delivered to Tenant personally, (b) on the date delivered, if delivered by overnight courier or (c) on the date which is two (2) days after being mailed. Either party may, by notice as aforesaid, designate a different address or addresses for notices, statements, demand or other communications intended for it. Notices given by Owner's managing agent shall be deemed a valid notice if addressed and set in accordance with the provisions of this Article. At Owner's option, notices and bills to Tenant may be sent by hand delivery.

*Space to be filled in or deleted*

**Water Charges:** 28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof, and throughout the duration of the Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter, as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises, or any part thereof, be supplied with water through a meter through which water is also supplied to other premises, Tenant shall pay to Owner as additional rent, on the first day of each month _____% (& $_____ ) of the total meter charges, as Tenant's portion. Independently of, and in addition to, any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office, or any bureau, department or official of the federal, state or city government, require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required, whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $_____ on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:** ~~30. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit, furnish heat to the demised premises when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 p.m. Tenant shall at Tenant's expense, keep the demised premises clean and in order, to the satisfaction of Owner, and if the demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, keep said sidewalks and curbs free from snow, ice, dirt and rubbish and maintain said sidewalks in a reasonably safe condition in compliance with requirements of law. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.~~

**Security:** 31. Tenant has deposited with Owner the sum of $ 115,000* as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent, or any other sum as to which Tenant is in default, or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the reletting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the case of every such use, application or retention, Tenant shall, within five (5) days after demand, pay to Owner the sum so used, applied or retained which shall be added to the security deposit so that the same shall be replenished to its former amount. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security, and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**\* see paragraph 46 of Rider to Lease**

**Captions:**
**32.** The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:**
**33.** The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales or conveyance, assignment or transfer of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building, or of the land and building, that the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonable delayed.

**Adjacent Excavation-Shoring:**
**34.** If an excavation shall be made upon and adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter upon the demised premises for the purpose of doing such work, as said person shall deem necessary, to preserve the wall or the building of which the demised premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:**
**35.** Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing, upon Owner, within fifteen (15) days after giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant, and Owner shall not be liable to Tenant for violation of the same by any other tenant, servants, employees, agents, visitors or licensees.

**Glass:**
**36.** Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for, and in the name of Owner. Bills for the premiums therefore shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:**
**37.** Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the demised premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the demised premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the demised premises, nor permit use of the demised premises for nude modeling, rap sessions, or as a so called other goods shop, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the demised premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal, or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal Law §235.00.

**Estoppel Certificate:**
**38.** Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, stating whether or not there exists any defaults by owner under this lease, and, if so, specifying each such default and such other information as shall be required of Tenant.

**Successors and Assigns:**
**39.** The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributes, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or a y partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

852 Eighth, LLC

Witness for Owner:

By: _____

Portofindough, LLC

Witness for Tenant:

By: Medhat Ahmed, Member

## ACKNOWLEDGEMENT

STATE OF NEW YORK,

                                SS.:

COUNTY OF

On the _____ day of _____ in the year _____, before me; the undersigned, a Notary Public in and for said State, personally appeared _____ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

FILED: NEW YORK CIVIL COURT - L&T 10/19/2023 04:34 PM INDEX NO. LT-316462-23/NY [HO]
NYSCEF DOC. NO. 11 RECEIVED NYSCEF: 10/19/2023
FROM : PHONE NO. : Aug. 23 2000 07:38PM P2

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit, or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building, or of the land and building, that the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which the demised premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing, upon Owner, within fifteen (15) days after giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant, and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:** 36. Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:** 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the demised premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the demised premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the demised premises, nor permit use of the demised premises for nude modeling, rap sessions, or as so called rubber goods shops, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the demised premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal Law §235.00.

**Estoppel Certificate:** 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the rent and additional rent have been paid, stating whether or not there exists any default by Owner under this lease, and if so, specifying each such default and such other information as shall be required of Tenant.

**Successors and Assigns:** 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to, this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner: ____________________

852 Eighth LLC
By: Edward A. Friedman, Member

Witness for Tenant: ____________________

Portofinodough, LLC
By: Medhat Ahmed, Member

## ACKNOWLEDGEMENT

STATE OF NEW YORK,
SS.:
COUNTY OF

On the ______ day of ____________________ in the year ______ before me, the undersigned, a Notary Public in and for said State, personally appeared ____________________ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

____________________
NOTARY PUBLIC

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersign d responsible under this guaranty, all of which the undersigned hereby expressly waives, and expressly agrees that the legality of this agreement and the agreements of this Guaranty under this agreement, shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the lease. As a further inducement to Owner to make the lease, Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the lease or of this guaranty, that Owner and the undersigned shall and do waive trial by jury.

Dated: . . . . . . . . . . . . . . . . . . . . . . . . . in the year . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Guarantor

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Witness

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Guarantor's Residence

Business Address

Firm Name

STATE OF NEW YORK          )
                                              ) ss.:
COUNTY OF                      )

On the . . . . . . . day of . . . . . . . . in the year . . . . . .
before me, the undersigned, a Notary Public in and for said State, personally appeared
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Notary

## IMPORTANT – PLEASE READ

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE
### IN ACCORDANCE WITH ARTICLE 35.

1.   The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any Tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2.   If the demised premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premis c clean and free from ice, snow, etc.

3.   The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4.   Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations, or interfere in any way with other tenants or those having business therein.

5.   No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or fixed by Tenant on any part of the outside of the demised premises or the building, or on the inside of the demised premises if the same is visible from the outside of the demised premises, without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the demised premises. In the event of the violation of the foregoing by Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant. Signs on interior doors and directory tables shall be inscribed, painted or affixed for Tenant by Owner at the expense of Tenant, and shall be of a size, color and style acceptable to Owner.

6.   Tenant shall not mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. Tenant shall not lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used, an interlining of builder's deadening felt shall

be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7.   Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the demised premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8.   Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom Tenant requests same in writing. Tenant shall be responsible for all persons for whom it requests such pass, and shall be liable to Owner for all acts of such person.

9.   Owner shall have the right to prohibit any advertising by Tenant which, in Owner's opinion, tends to impair the r putation of Owner or the building's desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10.   Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors, to permeate in or emanate from the demised premises.

11.   Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which was designated to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in such setting sufficient in Owner's judgment to absorb and prevent vibration, noise and annoyance.

12.   Refuse and Trash – Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TO

STANDARD FORM OF

*Store Lease*

The Real Estate Board of New York, Inc.
Copyright 2004 - All rights Reserved.
Reproduction in whole or in part prohibited.

Dated . . . . . . . . . . . . . . . . . . . . . . . . . . .

Rent Per Year . . . . . . . . . . . . . . . . . . . . . . .

Rent Per Month . . . . . . . . . . . . . . . . . . . . . .

Term
From . . . . . . . . . . . . . . . .
To . . . . . . . . . . . . . . . .

in the year

Drawn by . . . . . . . . . . . . . . . . . . . . . . . . . . .

Checked by . . . . . . . . . . . . . . . . . . . . . . . . .

Entered by . . . . . . . . . . . . . . . . . . . . . . . . . .

Approved by . . . . . . . . . . . . . . . . . . . . . . . . .

RIDER TO LEASE DATED AS OF July 1, 2021

BY AND BETWEEN

852 EIGHTH, LLC, AS OWNER,

AND

PORTOFINDOUGH, LLC, AS TENANT

ARTICLE 7. CONT'D

Tenant expressly agrees that in the event the (i) Owner, defaults under any mortgage now or hereafter affecting the Building and in the event that any mortgagee, assignee thereof or any successful bidder at any foreclosure sale shall succeed to Owner's interest as lessor hereunder or (ii) Owner enters into any ground or underlying lease affecting the Premises, then, and in any such event, Tenant agrees that it shall attorn to or recognize such mortgagee, assignee, successful bidder or lessor under such ground or underlying lease, as the case may be, as lessor hereunder for the entire unexpired balance of the term of this Lease, upon the same terms and conditions as are set forth in this Lease; provided, however that any such attornment following the events described in clause (i) shall be at the sole election of any such mortgagee, assignee, or successful bidder; and Tenant agrees to execute any instrument reasonably required to evidence such attornment. Owner warrants and represents to Tenant that as of the date hereof there is no ground or underlying lease affecting the Building or the Demised Premises.

ARTICLE 40. Conflict

To the extent that there shall be or exist any inconsistency between the terms and provisions of this Rider and the terms and provisions of the printed form to which it is attached, the terms and provisions of this Rider shall govern.

ARTICLE 41. Term; Commencement Date; Annual Rent; Other Fees

(A) This Lease shall be for a term of approximately twelve (12) years commencing July 1, 2021; the date of delivery of possession of the Demised Premises to Tenant (the "Commencement Date") and terminating on the last day of the month immediately preceding the twelfth (12th) anniversary thereof, unless sooner terminated pursuant to law or the express provisions of this Lease.

(B) Tenant shall pay to Owner rent throughout the term of this Lease ("Base Rent") without any set-off or deduction

\re\1816NBE3.301 1

whatsoever at the following rates:

(i) Except as provided in Sub-article (D), from the Commencement Date through and including the last day of the month preceding the month during which the first (1st) anniversary of the Commencement Date occurs (such last day of such month being hereinafter called the first "Annual Date" and each subsequent anniversary thereof hereinafter the second Annual Date, third Annual Date, etc.) $276,000.00 per annum ($ 23,000.00 per month);

(ii) From the first Annual Date through and including the second Annual Date, $288,000.00 per annum ($24,000.00 per month);

(iii) From the second Annual Date through and including the third Annual Date, $312,000.00 per annum ($26,000.00 per month);

(iv) From the third Annual Date through and including the fourth Annual Date, $348,000.00 per annum ($29,000.00 per month);

(v) From the fourth Annual Date through and including fifth Annual Date, $361,920.00 per annum ($30,160.00 per month);

(vi) From the fifth Annual Date through and including the sixth Annual Date, $376,396.80 per annum ($31,366.40 per month);

(vii) From the sixth Annual Date through and including the seventh Annual Date, $391,452.67 per annum ($32,621.06 per month);

(viii) From the seventh Annual Date through and including the eighth Annual Date $407,110.78 per annum ($33,925.90 per month);

(ix) From the eighth Annual Date through and including the ninth Annual Date $423,395.21 per annum ($35,282.93 per month); and

(x) From the ninth Annual Date through and including the tenth Annual Date $440,331.02 per annum ($36,694.25 per month);

xi) From the tenth Annual Date through and including the eleventh Annual Date $457,944.26 per annum ($38,162.02 per month); and

\re\1816NBE3.301 2

xii) From the eleventh Annual Date through and including the twelfth Annual Date $476,262.03 per annum ($39,688.50 per month); and


(C) Subject to the provisions of Sub-article (D), Tenant shall pay to Owner the Base Rent at the rates provided above and as escalated and adjusted pursuant to the various provisions of this Lease, in monthly installments as provided above in advance on the first day of each calendar month throughout the term hereof, except that if the Commencement Date falls on a day other than the first day of a calendar month, then upon execution hereof, Tenant shall pay to Owner a pro rata portion of Base Rent for the initial fractional month. The first installment of Base Rent for the first full calendar month after the period provided for in Sub-article (D) shall be paid upon the execution of this Lease. All Base Rent, additional rent and other amounts payable to Owner under the provisions of this Lease shall be paid by Tenant to Owner at the times specifically provided therefor or, if no such time is expressly set forth, upon demand, or together with the next succeeding installment of Base Rent, whichever shall first occur, in legal tender, at the address of Owner first hereinafter set forth, or at such other place as Owner may designate in writing, without any setoff, deduction or credit whatsoever except as expressly set forth in this Lease and without any prior demand or notice except as expressly set forth in this Lease. Failure to deliver any escalation or other statement to Tenant shall in no way modify or waive Tenant's obligation to pay any item of Base Rent or additional rent otherwise due under this Lease. Owner shall make a diligent effort to deliver the foregoing bills and statements within 3 years from the period for which such charge is being rendered.

(D) Notwithstanding anything contained in this Lease to the contrary, Owner in consideration of Tenant's agreement to install and build its Initial Improvements hereinafter provided for hereby agrees that, for so long as Tenant shall not be in default beyond any applicable grace period provided for under this Lease, Tenant shall be entitled to a credit against Base Rent at the rate of Twenty Three Thousand & 00/100 ($23,000.00) Dollars per month for a period of Five (5) calendar months following the month in which the Commencement Date occurs or the date of possession by Tenant, **whichever is sooner** (all of the other terms, covenants and conditions of this Lease to commence as of the Commencement Date, including, but not limited to, Tenant's obligation to pay additional rent).

(E) All sums, amounts or charges other than Base Rent payable by Tenant pursuant to the provisions of this Lease, shall be deemed items of additional rent, and the failure by Tenant to pay any such item of additional rent shall entitle Owner to

\re\1816NBE3.301 3

exercise all remedies for such failure which it would be entitled to exercise at law or in equity in respect of any failure to pay Base Rent.

(F)  Tenant shall pay all Rent, Additional Rent and all other sums due under this Lease directly to Owner's agent, Gerel Associates, LLC at 505 Fifth Avenue, New York, New York 10017, unless notified and directed in writing by Owner to do otherwise.

(G)  Tenant agrees to execute a confirmation of the Commencement Date and Rent Commencement Date in the forms annexed hereto, respectively, as Exhibits "B" and "B1", on or about the date of delivery of possession of the Demised Premises (indicating the Commencement Date), and the earlier of four (4) months from the Commencement Date or the date that Tenant opens for business (indicating the Rent Commencement Date).  The Lease Commencement Date letter shall set forth the Lease Commencement and Lease Termination dates, and the Rent Commencement Date letter shall set forth the date when Tenant's obligation to pay rent commences.

## ARTICLE 42. Tax Escalation

(A)  Tenant hereby agrees to pay, as additional rent, thirty three and one third percent (33 1/3%) of any and all increases in Real Estate Taxes over and above the Real Estate Taxes (as hereinabove defined) payable for the period July 1, 2021, through June 30, 2022 (the "Base Tax Year") (such taxes as finally determined to be payable for such year, after any certiorari or other proceeding, if any, being hereinafter referred to as the "Base Taxes") imposed on the Property (as hereinafter defined) with respect to every Tax Year or part thereof during the term of this Lease, whether any such increase results from a higher tax rate or an increase in the assessed valuation of the Property, or both, or any other factor; said Property being commonly known as 852 Eighth Avenue, New York (covering tax lots for 852, 854 and 856 Eighth Avenue), New York, including any "air rights" or "development rights" thereof.  "Real Estate Taxes" shall mean all taxes and assessments imposed upon or in respect of the Property including sewer rents and charges and water frontage charges (but not water meter charges and the sewer rents arising therefrom, if any, which are separately metered to the Demised Premises, and which are paid directly by Tenant), business improvement district ("BID") assessments and charges, and any special assessment imposed thereon for any purpose whatsoever, including taxes payable by Owner to a ground Lessor, if any, with respect thereto, or any Payment in Lieu of Taxes ("PILOT")above the payment of Real Estate Taxes in the base year pursuant to any governmental tax abatement program, if any, and any and all expenses (including reasonable attorneys' and experts' fees and

\re\1816NBE3.301 4

disbursements) incurred by Owner in contesting such Taxes, which expenses shall be allocated to the Tax Years in which incurred. If, due to a change in the method of taxation, any income, profit or other tax, however designated, shall be levied against Owner's interest in the Property in whole or in part for or in lieu of any tax which would otherwise constitute Real Estate Taxes, such change in method of taxation shall be included in the term "Real Estate Taxes" for purposes hereof. "Tax Year" shall mean each period of twelve (12) months commencing on the first (1st) day of July subsequent to the Base Tax Year, in which occurs any part of the term of this Lease or such other period of twelve (12) months occurring during the term of this Lease as hereafter may be duly adopted as the fiscal year for real estate tax purposes of the City of New York. All such payments shall be appropriately prorated for any partial Tax Years occurring during the first and last years of the term of this Lease. A statement from Owner shall be sufficient evidence of the amount of Real Estate Taxes and for calculation of the amount to be paid by Tenant. Notwithstanding anything to the contrary set forth herein, in the event that Owner shall at any time in the future add additional floors to the Building, or otherwise materially increase the rentable square footage thereof, then, and in any such event, Tenant's share of increases in Real Estate Taxes shall be equitably reduced from its current thirty three and one third (33 1/3%) percent share for all purposes under this Article 42.

(B) Only Owner shall be eligible to institute tax reduction or other proceedings to reduce the assessed valuation of the Property. Should Owner be successful in any such reduction proceedings and obtain a rebate or reduction for periods during which Tenant has paid Tenant's share of increase in Real Estate Taxes, Owner shall, after deducting Owner's expenses in connection therewith, including, without limitation, attorneys' fees and disbursements, return to Tenant thirty three and one third percent (33 1/3%) of such rebate, except that Tenant shall not be entitled to any portion of such rebate in excess of any additional rent for Real Estate Taxes for any applicable Tax Year that has been paid by Tenant.

(C) In addition to the Base Rent, any and all amounts due under this Article 42, "additional rent" shall be collected without setoff, deduction or credit. All additional rent shall be payable ten (10) days after tender of an invoice from Owner to Tenant or, in the case of any rebate to a Tenant pursuant to subsection (B), above, a credit shall be given by Owner to Tenant toward the next ensuing installment(s) of Base Rent in equal monthly installments over the term of the rebate until the credit is exhausted, as the case may be.

(D) Owner's failure during the Lease term to prepare and deliver any of the foregoing statements, or Owner's failure to make a demand for payment, shall not in any way waive or cause

\re\1816NBE3.301 5

Owner to forfeit or surrender its rights to collect any of the
foregoing items of additional rent which may have become due
during the term of this Lease. Tenant's liability for the amounts
due under this Article 42 shall survive the expiration or
termination of this Lease. In no event shall any adjustment
pursuant to this Article 42 result in any reduction in Base Rent.
Owner shall use reasonable efforts to prepare and deliver the
foregoing statements within a reasonable time after each item of
such additional rent shall become due.

(E) It is expressly acknowledged that Tenant's failure to
pay such tax escalation additional rent shall entitle Owner to
exercise all remedies for such breach which it would be entitled
to exercise at law or in equity in respect of any failure to pay
Base Rent.

ARTICLE 43. Use.

(A) Tenant shall be permitted to use the Demised Premises as
a Pizzeria/Italian Restaurant, and for the sale of related items,
only. Tenant shall use, occupy, operate and maintain the Premises
throughout the Term of this Lease as a dignified first class
retail establishment, in a high and reputable manner and in
accordance with the provisions of the Lease and any applicable
requirements of law. Any use or occupancy of the Premises that, in
Owner's reasonable judgment would be likely to: (i) cause damage
to the Premises, the building of which the Premises forms a part
(the "Building"), or the parcel of land upon which the Building is
constructed (the "Land") or any portion thereof or any equipment,
facilities or other Systems (as defined below) therein; (ii) impair
the appearance of the Premises or the Building (iii) interfere
with the maintenance, operation or repair of the Real Property
(Premises and or Building); (iv) adversely affect any service
provided to, and or the us and occupancy by any other tenant or
occupant; or (v) violate the certificate of occupancy for the
Premises is prohibited. Tenant shall not permit any business to be
operated in or from the Premises of on the sidewalk adjacent to
the Premises by Tenant or any concessionaire of licensee without
the prior written consent of Owner in each instance. Tenant shall
not permit any patrons or guests of Tenant's business to loiter or
gather on the sidewalks in front of the Premises. Tenant shall
conduct its operations and business so as not to disturb, by
noise, odor or otherwise, any other tenants or occupants of the
Building. No music or other loud noise shall be audible outside
the Premises or to any of the other tenants of the Building.
Tenant shall be solely responsible for soundproofing the Premises
so as to comply with this Article. Tenant acknowledges and agrees
that the provisions of this Article 43, are a material inducement
to Owner entering into this Lease, and any violation of the terms
or provisions of this Article 33, may be deemed by Owner, in its
sole and absolute discretion, to be a material breach of the Lease

\re\1816NBE3.301 6

and an event of default hereunder entitling Owner to terminate the Lease upon ten 10 days' prior written notice if such default is not cured within such time and to seek damage and such other and additional relief as may be appropriate.


(B)   Tenant, at its sole cost and expense, shall obtain and at all times maintain and comply with all terms and conditions of any and all licenses, certifications and/or permits required for the lawful conduct of its business and the Permitted Use of the Premises, and shall deliver to Owner copies of each such license, certificate and/or permit. At any time and from time during the Term, Tenant shall permit Owner to inspect the originals thereof upon request. Tenant shall at all times comply with the terms and conditions applicable to each such license, certification and or permit. The failure of Tenant to fully comply at all times with the terms and conditions thereof may be deemed, by Owner, in its sole and absolute discretion, as a material breach of the Lease and an event of default hereunder entitling Owner to terminate this Lease and to seek damages and such other and additional relief as may be appropriate.


ARTICLE 44. As is; Repairs, Maintenance

(A)   Neither Owner nor Owner's agents have made, nor is Owner willing to make, any representations, warranties, or promises, either express or implied, with respect to the physical condition of the Building or the Demised Premises, the use or uses to which the Demised Premises or any part thereof may be put, the operation of any of the mechanical, plumbing, electrical, flue (if any), ventilation or exhaust systems servicing the Demised Premises, the expenses of operation, the existence of asbestos or other toxic or hazardous materials or waste in or around the Demised Premises or the Building, or any other matter or thing affecting or related to the Demised Premises or the Building except as expressly set forth in this Lease; and no rights, easements, or licenses are acquired by Tenant by implication or otherwise except as expressly set forth herein. During the Term of this Lease, and for only a permitted use under this Lease, Tenant shall be permitted to use the existing flue located from the Demised Premises to the roof of the Building. Owner makes no representation that said flue is in working condition or that it complies with existing Federal, State or local laws, rules or regulations. Tenant acknowledges that it has inspected the Demised Premises and is satisfactorily acquainted with their condition, and agrees to take the same "as is." Tenant further acknowledges that taking possession of the Demised Premises shall be conclusive evidence that the Demised Premises are in good and satisfactory condition at the time such possession was so taken. Notwithstanding anything to the contrary contained in this Lease, Tenant hereby acknowledges that Owner shall have no obligation to perform any work in connection with

\re\1816NBE3.301 7

the preparation of the Demised Premises for occupancy by Tenant. Except as provided in Article 9, Owner shall be under no obligation to make any improvements in or to the Demised Premises throughout the term hereof. Notwithstanding anything to the contrary contained in this Paragraph 44(A), Owner shall deliver to Tenant an ACP-5 Certificate prior to the commencement of Tenant's Initial Improvements, as hereinafter described.

(B) Tenant, at its sole cost and expense, shall take good care of the Demised Premises. Tenant, at its sole cost and expense, shall take good care of all improvements and personal property located in the Demised Premises, including, without limitation, all furniture, fixtures, machinery, equipment and all other personal property and stock purchased by Tenant and used in connection with the operation of its business at the Demised Premises, (all of the foregoing, including, without limitation, Tenant's Initial Improvements, being hereinafter collectively referred to as "Tenant's Property") and Tenant shall suffer or commit no waste or injury thereto. Tenant shall make all reasonably necessary repairs (other than structural repairs, defined as major repairs to "Structural Elements", to the Demised Premises and/or Tenant's improvements (including but not limited to its initial alteration and any sign and or storefront), ordinary, as well as extraordinary, foreseen, as well as unforeseen; provided, however that Tenant shall not be obligated to make any repairs to the extent that the same is necessitated by the negligent acts or omissions of Owner, its agents, employees or contractors or other tenants in the Building. Nevertheless, any damage to the Building (including, without limitation, the Demised Premises, structural elements of said Building, including, but not limited to the floor slabs heating, plumbing or electrical ventilating or air conditioning systems and the roof, foundation and exterior walls; all considered "Structural Elements"), interior and exterior, arising from or caused by the negligence or omissions of Tenant (or its agents, servants, employees, invitees or contractors) shall be repaired by Tenant, at its sole cost and expense, regardless of whether such repairs are structural or non-structural in nature. Notwithstanding anything to the contrary contained in this Article 44, on or before Tenant commences its Initial Improvements, Owner shall deliver an ACP-5 Certificate to Tenant.


(C) When used in this Article 44 and elsewhere in this Lease, the term "repairs" shall include replacements and substitutions of all property when necessary, of a quality, class and value at least equal to the property replaced or substituted.

(D) Tenant shall carefully supervise the operation and maintenance of the Demised Premises and shall keep same in clean and orderly condition at all times (including but not limited to all glass and metal portions thereof), shall conduct Tenant's

\re\1816NBE3.301 8

business in a manner that shall not permit offensive and disagreeable odors to emanate from any portion of the demised premised or from any garbage refuse or swill while on or in the process or removal from said "premises". The Tenant agrees to install and maintain in good condition and repair at its own expense, adequate ventilation and fire retardant systems, and/or other fire protection devices as may be required by Owner's insurance carrier or its lending institution for this purpose.

(E) Tenant, at its sole cost and expense, will arrange that each day's garbage will be stored in the place and manner designated by Owner and will be removed from the Demised Premises into the designated position for removal by the garbage removal company and that all garbage removal shall at all times be done promptly and efficiently and not less than six (6) times per week. Tenant agrees if demanded by Owner, to hire the carting company used by the Owner for garbage removal from the Demised Premises if said company's rates are competitive, but Tenant reserves the right to employ a different company for the services herein required. Tenant shall regularly have the Demised Premises serviced by an exterminator and shall at all times keep such "premises" free of roaches, rodents, vermin and other infestation of any kind.

(F) Tenant further covenants and agrees, at Tenant's sole cost and expense, to keep the drain or wastepipes and sewer connections and mains free from obstruction to the reasonable satisfaction of Owner, and to the satisfaction of all municipal, local or governmental authorities having jurisdiction. In connection therewith, Tenant shall contract to have such drains and pipes inspected and cleaned not less than twice annually (more frequently if required by Owner's insurance carrier or lending institution). In the event Tenant fails to do so, after reasonable notice Owner may have such work done and charge Tenant therefore, and the same shall be added to and considered as additional rent. Tenant shall not be responsible for blockage of waste lines caused by other tenants.
Tenant may not permit live entertainment or amplified music of any kind in the Demised Premises. Tenant may have non amplified music by a single musician or recorded music of a nature, quality and decibel volume similar to that provided by Muzak.

(H) Tenant agrees to clean and keep clean all windows, interior and exterior, of the Demised Premises.

(I) The Tenant shall not, without Owner's prior written consent, place or erect signs of any nature on any part of the Leased property. The Owner will not unreasonably withhold its consent to the placement of a sign bearing the Tenant's tradename. The color, location, material and style of such sign shall be subject to the Owner's prior written approval, which shall be at Owner's sole discretion.

\re\1816NBE3.301 9

(J) When used in this Article 44 and elsewhere in this Lease, the term "repairs" shall include replacements and substitutions of all property when necessary, of a quality, class and value at least equal to the property replaced or substituted.

## ARTICLE 45. Tenant's Initial Improvements

(A) Promptly after the Commencement Date, Tenant, at its sole cost and expense, shall, within one hundred twenty (120) days of the Commencement Date, complete construction or cause to be constructed, in a good and workmanlike manner, at the Demised Premises a store suited to the operation and use referred to in Articles 2 and 43 hereof, and install all furniture, furnishings, machinery and equipment required or otherwise appurtenant to the operation of such a store threat including, without limitation, the water meter referred to in Article 28 (and an adequate Ansul C02 system, unless the same have already been installed by a prior tenant at the Demised Premises, and such system is deemed adequate by Owner in its reasonable judgment). All work constructed and all furniture, furnishings, machinery and equipment installed by Tenant pursuant to the preceding sentence is hereafter referred to as "Tenant's Initial Improvements". Tenant shall not suffer or permit any liens, hypothecations or security interest to be granted in or filed against Tenant's Initial Improvements, other than the portion thereof which are moveable trade fixtures. Tenant's Initial Improvements shall be constructed and installed in full compliance with Tenant's obligations under this Lease, including, without limitation, the terms and provisions of Article 3 and 47 hereof. Except to the extent that the same involve structural alterations or alterations within the ambit of those described in Article 47(i), Owner shall not unreasonably withhold its consent to Tenant's Initial Improvements.

## ARTICLE 46. Security Deposit

Owner shall deposit the Security Deposited by Tenant pursuant to paragraph 31 ($115,000.00) hereof in a segregated account (hereinafter described as the "Initial Security Deposit"). On the Commencement Date, such Security Deposit shall equal five (5) months' Base Rent.

On the first anniversary of the Term, provided Tenant is not in default of any of the terms of this Lease, Owner shall release to Tenant $23,000.00, from the Initial Security Deposit, so that the Security Deposit shall equal four (4) months Base Rent.

(B) Upon each anniversary of the term, Tenant agrees to tender such additional security so that the security at all times equals the number of months of Base Rent as may be required under the Lease. Failure to tender such additional Security Deposit within ten (10) days of such anniversary shall constitute a

\re\1816NBE3.301 10

substantial default under this lease.

If Tenant is in default under this Lease more than two (2) times in any twelve (12) month period, whether or not such default is cured, then without limiting Owner's other rights and remedies provided for in the Lease or at law or in equity, the Security Deposit shall automatically be increased by an amount equal to one additional month's Base Rent

ARTICLE 47. Supplementing Article 3 of the Printed Form

Supplementing but not limiting the provisions of Article 3:

(i) a. No alteration (as such term is hereinafter defined) shall be made that is of a character which involves changes to the steel framework or foundations of the Building or (a) affects any part of the Building outside of the Demised Premises, or (b) affects the proper functioning, or overloads the capacity, of the mechanical, electrical, plumbing, heating, ventilating, air-conditioning or other service systems of the Building inside or outside the Demised Premises.

b. No installation of any storefront shall be made without the express written prior approval of Owner. No installation of any storefront shall be approved prior to submission to Owner of a set of detailed plans and specifications for such work; Tenant shall pay Owner its cost to review such plans, including reasonable architectural and engineering fees charged to Owner.

(ii) At least fifteen (15) days prior to commencement of any alterations, Tenant shall furnish Owner with detailed plans and specifications of the alterations to be make for Owner's prior written approval. Tenant shall not proceed until and unless Owner approves such plans and specifications. Within seven (7) days after receipt of such plans and specifications Owner shall give its written approval or disapproval and, if Owner disapproves, it shall set forth its reasons for its disapproval in a notice to Tenant. Owner's failure to respond within said seven (7) day period shall be deemed Owner's disapproval of such plans and specifications. Except as to structural alterations and as to alterations affecting the matters described in clause (i) above, as to which Owner reserves the right to grant or withhold its approval to proposed alterations in its sole and arbitrary discretion, Owner agrees not to unreasonably withhold or unduly delay its consent to proposed interior alterations to the Demised Premises.

(iii) All alterations shall be done in a good and workmanlike manner and with first quality new material.

(iv) Owner and its agents shall have the right to

\re\1816NBE3.301 11

inspect the Demised Premises from time to time while the alterations are being performed after giving reasonable notice (which may be oral), except in event of emergency, where no notice shall be necessary.

(v) No alteration shall cause or result in the occurrence of such odors, noise and/or vibration as would violate any requirement of law or regulation.

(vi) Tenant shall proceed with all alterations promptly and shall prosecute the same to completion with reasonable diligence and continuity under all the facts and circumstances then prevailing, subject in all events to the sixty (60) day deadline for Tenant's Initial Improvements hereinabove provided.

(vii) Tenant shall obtain all necessary consents, authorizations and licenses from all federal, state and/or municipal authorities having jurisdiction over any of Tenant's improvements, and all work shall be done in accordance with the plans and specifications and the consents, authorizations and licenses obtained. All work shall be performed in compliance with the provisions of the law and regulations applicable thereto and Tenant shall obtain and deliver to Owner all "sign-offs" of the New York City Building Department and any other governmental agencies involved. Owner, at Tenant's sole cost and expense, shall cooperate with Tenant and executed reasonable documents requiring the signature of the Owner of the Building in connection with such consents, authorizations and licenses provided such documents are accurate, comply with all applicable laws, do not subject Owner to criminal or civil liability and do not require Owner to pay any monies in connection therewith, and further provided that Tenant agrees to indemnify Owner in connection therewith. Owner shall not be required to certify as to the truth of any information contained in any documents of which Owner has no direct knowledge.

(viii) Tenant shall employ only such labor in the performance of its work as will not cause a labor dispute in the Building.
(ix) Owner shall be furnished with a certificate or certificates of Workers' Compensation Insurance covering all persons who will perform the work for Tenant or any subtenant or any contractor or subcontractor.

(x) Owner will be furnished with a policy or certificate of comprehensive general liability insurance covering Owner, Owner's mortgagee(s) and managing agent for personal injury and property damage in an amount not less than $3,000,000 for injury or death to any person, $5,000,000 for injury or death to more than one person in one occurrence and $1,000,000 in respect of injury or damage to property (not more than $1,000,000 of the foregoing insurance may be in the form of umbrella coverage over a

\re\1816NBE3.301 12

basic coverage of $1,000,000). Such policy shall be maintained at all times during the progress of the work and shall provide that no cancellation shall be effective without at least fifteen (15) days' prior written notice to Owner.

(xi) Tenant shall indemnify and save Owner harmless from and against any and all bills for labor performed and equipment, fixtures and material furnished to Tenant and from and against any and all liens, bills or claims therefor or against the Demised Premises or the Building and from and against all losses, damages, costs, expenses, suits and claims whatsoever in connection with any such work, including, without limitation, any liability or charge for sales or other taxes imposed or demanded for labor or materials in connections therewith.

(xii) Except for the provisions of clause (xii) (1), the provisions of this clause (xii) shall not apply in respect of the construction of Tenant's Initial Improvements. Before the commencement of any work or work project the aggregate cost of which exceeds $100,000: (1) Tenant shall furnish Owner with a copy of the contract or contracts for the performance of the work, which contract shall set forth the full price for the performance thereof; and (2) Tenant shall deliver a performance and completion bond or a deposit in a New York City bank account, requiring for withdrawals the signatures of both Owner and Tenant, the full amount of the contract price for the performance of the work, from which account withdrawals shall be made for the payment of the cost of the work as the same shall progress upon receipt of evidence satisfactory to Owner that the sums requested are justly due and owing and that no liens have been filed against the Demised Premises or the Building in connection with such work.

(xiii) In the event that any alterations made by or on behalf of Tenant shall cause an increase in the premiums paid by Owner on its policies of insurance relating to the Building, Tenant shall within ten (10) days after demand by Owner reimburse Owner for the increased costs of such insurance, as and when billed to Owner and throughout the term of this Lease. Determination of the foregoing shall be on the same basis as Article 6 of the printed form.

The term "alteration" as used in this Article 47 shall mean any improvement, addition, change or installation of, in or to the Demised Premises, including, without limitation, any of such involving electrical, air-conditioning, ventilation, heating, plumbing, ceilings, stairways, demising walls within the Demised Premises, radiators, whether or not the same are made in connection with the repairs, replacement or addition to trade fixtures, machinery or equipment.

Notwithstanding any provision of this lease to the

\re\1816NBE3.301 13

contrary, Tenant shall, at its expense, subject to all of the provisions of this Lease, comply with all aspects of the Americans with Disabilities Act, as now or hereafter constituted (the "ADA"), with respect to the demised premises, whether or not such compliance is required as the result of Tenant's business or Tenant's use or manner of use of the demised premises or the building (including the use permitted under this lease), and whether or not such compliance requires structural changes to the demised premises. If Tenant's business or Tenant's use or manner of use requires changes to any portion of the building or areas adjacent to the building in order to comply with the ADA, Owner shall have the option of either terminating this lease (in which event this lease shall end on the 30th day following Owner's notice, without further liability or obligation of Owner or Tenant, beyond that date) or performing those changes at Tenant's expense (in which event, Tenant shall pay Owner for the expense of the changes, plus 15% of the expense, in installments, in advance, as the work is performed).

Tenant shall indemnify, defend and hold harmless Owner from and against any claims, actions or proceedings, and all losses, damages, liabilities, costs and expenses (including, without limitation, attorneys' fees) in connection therewith, arising out of Tenant's failure to comply with the ADA or this Article.

ARTICLE 48. Insurance

(A) Supplementing, but not limiting Tenant's obligations under Articles 8 and 9 of the printed form, throughout the term of this Lease, Tenant shall:

(i) Keep Tenant's personal property insured against loss or damage caused by the perils of (a) fire, windstorm, flood and perils generally included under extended coverage; (b) sprinkler leakage; (c) vandalism and malicious mischief, and (d) boiler and machinery exposure, all in an amount equal to the full replacement value thereof.

(ii) Provide and keep in force comprehensive general liability insurance against liability for personal injury and property damage in an amount not less than $3,000,000 for injury or death to any person, $5,000,000 for injury or death to more than one person in one occurrence and $1,000,000 in respect of injury or damage to property (not more than $1,000,000 of such insurance may be in the form of umbrella coverage over a basic

\re\1816NBE3.301 14

coverage of $1,000,000). Said insurance shall protect Owner, Owner's mortgagee(s) and managing agent and Tenant from all loss or liability resulting from, personal injury, death, or property damage arising or occurring upon, or in connection with the Demised Premises, or any improvements or equipment.

(iii) Provide and keep in force worker's compensation insurance in a form prescribed by the laws of the State of New York and employer's liability insurance.

(iv) Provide and keep in force such other insurance and in such amounts as may from time to time be reasonably required by Owner against such other insurance hazards as at the time are commonly insured against in the case of operations similar to Tenant's.

(v) Procure policies for all such insurance for periods of not less than one year and deliver to Owner such policies or certificates thereof, with evidence of the payment of the premiums thereon, and procure renewals thereof from time to time at least twenty (20) days prior to the expiration thereof.

(vi) Permit no violation of any of the conditions or provisions of any such policy, and Tenant shall so perform and satisfy the requirements of such insurance carriers so that companies of good standing shall at all times be willing to write and continue such insurance.

(B) All such insurance policies shall be issued by any insurance company rated Best 10A or better authorized to do business in the State of New York. Owner shall have the right to review the adequacy of Tenant's insurance coverage every year throughout the term and may increase the minimum amounts of insurance required of Tenant under this Lease to amounts required of commercial tenants located in Manhattan, New York in similar buildings, in equivalent sized space and with similar operations. All such polices shall provide for thirty (30) days' written notice to Owner prior to any cancellation thereof or change affecting Owner's or Tenant's coverage thereunder. All such policies shall name the Owner of the fee and Owner's mortgagees as additional insureds and mortgagees.

(C) Tenant shall not permit a violation in the Demised Premises of any of the conditions or provisions of any insurance policies carried by Owner in respect of the Building or the Demised Premises of which the Tenant is made aware by written notice thereof. All insurance carried by Owner and Tenant with respect to the Demised Premises shall contain waivers of subrogation, if obtainable without additional charge. Tenant shall take all steps to assure that Tenant's maintenance of insurance required under this lease shall not affect adversely or otherwise diminish the liability of the carriers issuing insurance

\re\1816NBE3.301 15

to Owner.

### ARTICLE 49. Utilities, Sprinkler System

(A)  Except to the extent set forth in this Article, Owner shall not be obligated to supply or arrange for the availability to the Demised Premises of any utility services, including without limitation, water, hot water, electrical current or gas service.

(B)  Tenant, at its sole cost and expense, agrees to install, maintain, repair and, if necessary, replace, all utility meters serving the Demised Premises.

(C)  Throughout the term of this Lease, all sprinkler systems servicing the Demised Premises shall be maintained, repaired and, if necessary, replaced at Tenant's sole cost and expense.

(D)  Tenant's obligations under this Lease, including, without limitation, its obligations to pay Base Rent, additional rent and other charges shall continue despite the inability of the appropriate utility companies to provide utility services to the Demised Premise for any reason whatsoever.

### ARTICLE 50. Late Fees, Interest

(A)  If Tenant shall fail to pay all or any part of any installment of Base Rent or additional rent for more than ten (10) days after the same shall have become due and payable, Tenant shall pay as additional rent hereunder to Owner a late charge of four (4) cents for each dollar of the amount of such Base Rent or additional rent which shall not have been paid to Owner within such ten (10) days after becoming due and payable.

(B)  The late charge payable pursuant to Sub-article (A) above and interest payable pursuant to Sub-article (B) above shall be (i) payable on demand and (ii) without prejudice to any of Owner's rights and remedies hereunder, at law or in equity for nonpayment or late payment of rent or other sum and in addition to any such rights and remedies.  No failure by Owner to insist upon the strict performance by Tenant of Tenant's obligations to pay late charges and interest as provided in this Article shall constitute a waiver by Owner of its right to enforce the provisions of this Article in any instance thereafter occurring. The provisions of the Article 50 shall not be construed in any way to extend the grace periods or notice periods provided for in Article 17 of this Lease.

### ARTICLE 51. Delay in Vacation of Premises

(A)  Tenant agrees it shall indemnify and save Owner harmless against all costs, claims, loss or liability resulting from delay by Tenant in surrendering the Demised Premises upon the expiration

\re\1816NBE3.301 16

or earlier termination of this Lease, including, without
limitation, any claims made by any succeeding tenant founded on
such delay.

(B) The parties recognize and agree that the damage to Owner
resulting from any failure by Tenant timely to surrender the
Demised Premises will be substantial, will exceed the amount of
monthly installments of Base Rent theretofore payable hereunder,
and will be impossible of accurate measurement. Tenant therefore
agrees that if possession of the Demised Premises is not
surrendered to Owner upon the expiration or earlier termination of
the term of this Lease, then and in such event Tenant shall pay
Owner, as liquidated damages for each month and for each portion
of any month during which Tenant holds over in the Demised
Premises after the expiration or termination of the term of this
Lease, a sum equal to two (2) times the average annual Base Rent
and additional rent which was payable by Tenant per month under
this Lease during the last six (6) months of the term hereof. The
provisions of this sub-article (B) will not limit, reduce or
otherwise affect the liability of Tenant under sub-article (A) of
this Article 51. Notwithstanding anything to the contrary
contained in this Sub-Article (B), and provided Tenant surrenders
the Demised Premises within sixty (60) days upon the expiration or
earlier termination of the term of this Lease, liquidated damages
shall be 1.5 times the average annual Base Rent and additional
rent which was payable by Tenant per month under this Lease during
the last six (6) months of the term hereof.

ARTICLE 52. Heating, Ventilation or Air-Conditioning

Owner shall not be required to furnish and shall not be
deemed to have contracted to furnish heating, ventilation or air-
conditioning to the Demised Premises. Tenant, at its sole cost
and expense, shall provide and pay for all heating (in excess of
heating supplied pursuant to Article 30) ventilation and air-
conditioning necessary for the comfortable occupancy of the
Demised Premises and shall maintain, repair and/or replace all
HVAC equipment, now or hereafter installed in the Demised
Premises, as the same may be necessary from time to time. Any
HVAC equipment other than trade fixtures installed or replace by
Tenant shall be and shall remain the property of Owner. The
provisions of this Article 52 shall be deemed an express agreement
of the parties in waiver of any contrary provisions of law.
Notwithstanding anything to the contrary contained in this Article
52, Tenant shall not be required to replace the HVAC system to the
Demised Premises in the last three (3) years of the Term, if
replacement is needed as a result of ordinary wear and tear.

ARTICLE 53. Supplementing Article 11 of the Printed Form

(A) Owner may request at any time and Tenant shall deliver
within twenty (20) days after such request a list of the names and

\re\1816NBE3.301 17

addresses of all stockholders, officers and directors of a corporate tenant, or partners or members of a partnership or limited liability company Tenant, which list shall be sworn to by the chief executive officer of Tenant.

(B) In the event that Tenant shall at any time or times during the term of this Lease desire to assign this Lease or sublet the entire Demised Premises (no partial subleasing of the Demised Premises shall be permitted for any reason), Tenant shall deliver notice thereof to Owner and shall submit and otherwise comply with the following:

(i) The name of the proposed assignee or sublessee and the character of its business;

(ii) The activities to be conducted in the use to be made of the Demised Premises by the proposed sublessee or assignee;

(iii) The terms and conditions of the proposed subletting or assignment; and

(iv) Financial information and credit information pertaining to the proposed sublessee or assignee sufficient to enable Owner to evaluate its financial responsibility.

During the period of twenty (20) days after receipt by Owner of the foregoing information Owner, subject to the overriding provisions of Sub-article 53(C) which shall be paramount, but otherwise in its sole and arbitrary discretion, may elect either:

(i) to consent to such proposed subletting or assignment; or
(ii) to refuse or withhold consent to such subletting or assignment.

Such election may be exercised by written notice delivered to Tenant within such twenty (20) day period, but if no such notice is delivered, it shall be deemed that Owner has elected to refuse or withhold consent to the proposed subletting or assignment.

(C) Notwithstanding anything contained in this Article 53 to the contrary, Owner agrees, in accordance with the provisions of this Sub-article (C), to grant its consent to any such assignment of this Lease or a subleasing of the entire Demised Premises solely for the purposes set forth in Article 2 to a purchaser of Tenant's business, provided that Tenant is not in default under this Lease, and provided further that Tenant shall in each instance first have (i) complied with all of the requirements of Sub-article (B) of this Article 53 in respect thereof; (ii) reimbursed Owner for any reasonable costs that may be incurred by Owner in connection with said assignment or subletting, including,

\re\1816NBE3.301 18

without limitation, any legal costs incurred in connection therewith; (iii) delivered to Owner a Guaranty of Lease in the form of Exhibit C hereto dated the date of such assignment and/or subletting and (iv) caused the proposed assignee or sublessee (or the shareholders, members or partners of a corporation, limited liability company or partnership, as the case may be) to have delivered an affidavit to the effect that they have not been convicted of any felony.

(D)  Any assignment or subletting made in contravention of the provisions of this Article 53 shall not be binding upon Owner, and, at Owner's option, may be treated as a nullity, and of no force and effect whatsoever as against Owner.  No assignment of this Lease or subletting of the Demised Premises (whether with or without Owner's consent), shall operate or be construed to release or diminish Tenant's liability under this Lease, and such liability shall continue in full force and effect.  Moreover, no assignment or subletting (whether with or without Owner's consent) shall operate to relieve Tenant of the necessity of compliance with all of the provisions of this Article 53 with respect to any further assignment or subletting.

(E)  If the Demised Premises shall be sublet or occupied by any person or persons other than Tenant, Owner may, after default by Tenant, collect rent from the subtenant or occupant and apply the net amount collected to the rent herein reserved, but no such subletting, occupancy or collection of rent shall be deemed a waiver of the covenants in this Article 53, nor shall it be deemed an acceptance of the subtenant or occupant as a tenant, or a release of Tenant from the full performance by Tenant of all the terms, conditions and covenants of this Lease.

(F)  Each assignee shall assume and be deemed to have assumed this Lease and shall be and remain liable for the payment of the Base Rent and additional rent, and for the due performance of all the terms, covenants, conditions and agreements on Tenant's part to be performed during the term of this Lease.  No assignment shall be binding on Owner unless and until the assignee of Tenant shall deliver to Owner an instrument in recordable form which contains an assumption by the assignee, but the failure or refusal of the assignee to execute or deliver such instrument shall not relieve the assignee from liability as provided in this Sub-article (F).

(G)  In the event of a permitted subletting, the sublease shall contain a provision pursuant to which in the event of termination of this Lease, Owner shall have the right, at its election, to require the sublessee to attorn to and recognize Owner as the sublessee's Owner.

ARTICLE 54.  Covenants/Conditions  All of the covenants,

\re\1816NBE3.301 19

promises and agreements of Tenant contained herein shall be deemed and construed to be "Conditions", as well as "Covenants", as though the words specifically expressing or importing covenants and conditions were used in each separate instance.

### ARTICLE 55. Indemnity; Environmental Compliance

(A)  Without limiting any other indemnity extended by Tenant to Owner under the provisions of this Lease, Tenant hereby indemnifies and agrees to hold Owner harmless from and against any and all loss, liability, claim and/or expense (including, without limitation, damage, attorney's fees and disbursements) in connection with or arising from (a) any default by Tenant under this Lease; (b) Tenant's use or occupancy of the Demised Premises; (c) any acts, omissions or the negligence of the Tenant, its employees, servants, contractors, agents, licensees and business invitees in or about the Demised Premises, and/or (d) the violation by tenant of any law, rule, regulation or code now or hereafter in effect relative to the presence or disposal of other hazardous materials in the Demised Premises if brought to the Demised Premises by or on behalf of the Tenant, or any employee, servant, contractor, agent or business invitee of Tenant.  Tenant shall pay to Owner as additional rent an amount equal to all such losses, liabilities, claims and expenses within five (5) days after Owner's rendition to Tenant of bills or statements therefor.

(A)  Tenant shall, at Tenant's own expense, comply with any environmental cleanup responsibility laws now or hereafter enacted affecting the Demised Premises ("Cleanup Laws") caused by Tenant's use, occupancy or enjoyment of the Demised Premises.  Tenant shall, at Tenant's own expense, make all submissions to provide all information to, and comply with all requirements of, the appropriate governmental authorities (the "Authorities") under the Cleanup Laws.  Should the Authorities require that a cleanup plan be prepared and that cleanup be undertaken because of any spills or discharges of hazardous substances or wastes at the Demised Premises which occur during the term of this Lease for which Tenant is responsible, then Tenant shall, at Tenant's own expense, prepare and submit the required plans and financial assurances, and carry out the approved plans.  At no expense to Owner, Tenant shall promptly provide all information requested by Owner for the preparation of affidavits required by Owner to determine the applicability of the Cleanup Laws to the Demised Premises, and Tenant shall sign the affidavits promptly when requested to do so by Owner.  Nothing in this Sub-article 55(B) shall be construed as permitting any use not expressly permitted under Article 10 hereof.  The obligations of this Article 55 shall survive the expiration or termination of this Lease.

### ARTICLE 56. MISCELLANEOUS

\re\1816NBE3.301 20

(A)   Owner and Tenant each represent and warrant to the other that Tower Brokerage, Inc. and Current RE are the sole brokers (hereinafter defined as "Broker") who brought about this Lease, and that they have contacted no broker in connection with this transaction.  Owner agrees to pay the Broker a commission pursuant to separate agreement.  Tenant and Owner shall each indemnify and save the other harmless from and against any and all loss, claim, liability, damage or suit incurred or suffered by the other arising out of or in connection with any breach of the indemnifying party's representations set forth in this sub-article (A).

(B)   Whenever the performance or discharge of any duties or obligations on the part of Tenant reasonably contemplates such performance or discharge after the termination of this Lease, such duties and obligations shall survive any expiration or sooner termination of this Lease.

(C)   Tenant agrees that its sole remedy in cases where Owner's reasonableness in exercising its judgment or withholding its consent or approval is in issue shall be those in the nature of an injunction, declaratory judgment or specific performance, the rights to any money damages or other remedies being hereby specifically waived.

(D)   As a material inducement to Owner's entry into this Lease, Tenant covenants and agrees, throughout the term of this Lease, continuously (during Tenant's normal business hours) to operate the Demised Premises as a store in accordance with uses and operation described under Article 2.

(E)   Without limiting anything otherwise set forth in the Rules and Regulations, no awning, canopy or other projections, whether they contain or do not contain advertising material, may be attached to any portion of the Building without the prior written consent of the Owner.  Further, Tenant shall not post or erect or maintain outside or inside the window or show windows nor on any exterior construction, any signs, placards or other advertisement, except with the prior written approval of Owner.  No hanging outside signs will be approved nor will any non-professionally prepared papered signs posted on the windows or show windows on the Demised Premises be approved unless the same are required to be so posted at such location by law.  If Tenant violates the provisions of this Article, then in addition to and without limiting Owner's remedies under this Lease, Owner may itself remove any such sign, placard, advertisement or display without liability or obligation to Tenant and, if necessary, to carry out the foregoing, Owner may enter the Demised Premises to effect such removal.  Any violation by Tenant of the provisions of this sub-article shall be a material violation of this Lease.

\re\1816NBE3.301 21

(F)   Neither Owner, nor any of the individual principals, members or partners comprising Owner, shall have any personal liability to Tenant by reason of any default by Owner under any of Owner's covenants and agreements under this Lease or by reason of any claim against Owner arising out of or in connection with Tenant's use and occupancy thereof.  In the event of such default or claim, Tenant shall look only to Owner's estate in the Building to recover any loss or damage resulting therefrom and Tenant shall have no right to assert any claim against, nor any recourse to Owner's other property or assets or that of any of the partners comprising Owner to recover such loss or damage.

(G)   If any term, covenant, condition or provision of this Lease, or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term, covenant or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Lease shall be valid and enforceable to the fullest extent permitted by law.

(H)   This agreement may be executed in counterparts. The Signatures of the parties who sign different counterparts shall have the same effect as if the parties had signed the same counterpart. For purposes of this Agreement, a document (or signature page thereto) signed and transmitted by facsimile machine or telecopier or as a .PDF attachment to an e-mail is to be treated as an original document.  The signature of any party thereon, for purposes hereof, is to be considered as an original signature, and the document transmitted is to be considered to have the same binding effect as an original signature on an original document.

(I)   All notices required or permitted to be given hereunder, shall be sent by certified mail, return receipt requested, or by overnight carrier with proof of delivery, addressed as follows:

            If to Owner:        Gerel Associates LLC

                                505 Fifth Avenue,
                                New York, New York 10017

                                And

                                Edward A. Friedman
                                303 Park Avenue So.
                                Unit 319
                                New York, New York 10010

\re\1816NBE3.301 22

With a copy to:     Arthur J. Panoff, Esq.
                              Danow, McMullan & Panoff, P.C.
                              275 Madison Avenue, Suite 1711
                              New York, NY 10016
                              ajp@dmppc.com

If to Tenant: Addressed to Tenant at the address first above written

With a copy to :     Robert A. Glick, Esq. 600 Old Country Road, Suite 440
                              Garden City, New York 11530
                              rglick@bgbfirm.comom

or to such other address as may be furnished by either party to the other in like manner. All notices shall be deemed given when mailed, except for notice of change of address or party to receive notice, which shall be deemed given only upon receipt.

(J) Whenever Tenant violates or breaches any of its obligations hereunder, Tenant expressly acknowledges and agrees that Owner shall be entitled to seek injunctive relief (without limiting any other remedies which may be available to Owner at law or in equity).

(K) If Tenant is a corporation, prior to the execution of this Lease by Owner, Tenant shall supply Owner with a copy of resolutions of the Board of Directors of Tenant, duly certified by the Secretary of Tenant, to the effect that:

(a) Tenant is duly authorized and empowered to enter into this Lease; and

(b) The President of Tenant has been duly authorized, empowered and directed by said Board of Directors to enter into this Lease on behalf of Tenant.

If Tenant is a Limited Liability Company, prior to the execution of this Lease by Owner, Tenant shall supply Owner with a copy of a consent by the members to the terms of this Lease and giving the signature hereunder authority to execute the Lease on behalf of Tenant.

(L) The delivery of this Lease to Tenant shall in no event be deemed an offer to lease and no Owner/Tenant relationship whatsoever shall arise between the parties hereto unless and until a written lease between them is executed and exchanged.

(M) This lease shall constitute the entire agreement of the parties hereto with respect to the letting of the Demised

\re\1816NBE3.301 23

Premises. All prior agreements between the parties, whether written or oral, are merged herein and shall be of no further force and effect. This Lease cannot be changed, modified or discharged orally but only by an agreement in writing signed by both parties hereto.

(N) Each party agrees at any time and from time to time upon not less than ten (10) days' prior written request by the other to execute, acknowledge and deliver to give to such other party, a statement in writing, certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified, and stating the modifications), and the extent to which the Base Rent and other charges have been paid in advance, if any, and whether or not there is any existing default by the other party to its knowledge, under the terms of this Lease, or notice of default served by the party giving the certificate, or whether to its knowledge any condition or situation exists that with notice and/or the passage of time would be a default by the other party under the terms of this Lease, and such further information as the requesting party reasonably requests, it being intended that any such statement delivered pursuant to this Article 56 (N) may be relied upon by any prospective purchaser of the fee or by any prospective or existing mortgage or assignee of any mortgage upon the fee of the Demised Premises or creditor of Tenant. If any such certification shall allege nonperformance, the nature and extent of such nonperformance shall be summarized therein.

(O) This Lease may be executed in counterparts, each of which shall be deemed an original and together, shall constitute one and the same instrument.

(P) Tenant, throughout the term of this Lease, shall illuminate the window(s) of the Demised Premises with electric lights from sunset to sunrise.

(Q) Tenant covenants to keep the sidewalk in front of the Demised Premises clean and free from ice, snow, garbage and debris. Tenant agrees to have such sidewalk swept and scrubbed each morning, and at such other and additional times as necessary to maintain a clean and safe condition.

(R) Tenant covenants and agrees that no refuse, garbage or supplies of any nature, including but not limited to, any tables or chairs or other obstruction, shall be allowed or permitted to be placed on the sidewalk in front of the store or on any street adjoining the Demised Premises or the Building, nor any public corridor of the Building other than within the Demised Premises. Tenant covenants and agrees to keep all garbage, waste matter and refuse effectively covered (triple bagged) in clean sanitary

\re\1816NBE3.301 24

containers and to cause all grease to be contained in covered pails.

(S) All slop sinks and grease pans are to be cleaned and scrubbed daily; no drippings are to remain on any floors within the Demised Premises.

(T) Owner shall have the right to alter or to construct additions to the Building; provided, however, that any such alteration or construction will not materially interfere with the Demised Premises. In connection with any such alteration or construction, Owner shall have the right to utilize and hook up with all existing risers, conduits and other piping in the Building; such work to be performed at Owner's expense.

(U) All checks tendered to Owner as and for the rent shall be deemed payments for the account of the Tenant, and acceptance of rent from any person or entity other than Tenant shall not be deemed as an attornment to Owner by such payor or constitute consent to any assignment of this Lease or subletting of all or part of the Demises Premises.

(V) The terms "Landlord" and "Owner" as used herein shall be deemed synonymous.

(W) If, in connection with obtaining financing or refinancing or if required by any existing institutional mortgage lender holding a mortgage against the building or Owner's interest therein of which the Demised Premises forms a part, such institution requests reasonable modifications to this Lease, Tenant will not unreasonably withhold its consent thereto, nor delay of defer making such changes, provided such modifications do not materially increase Tenant's obligations, including, but not limited to:

i. The requirement that Tenant give such lender notice of any default on the part of Owner and/or permit the curing of such defaults by such lender, together with the granting of such additional time for the curing as may be required for such lender to get possession of the Building, or

ii. The requirement that Tenant give an estoppel certificate, or

iii. The condition precedent that the lender give its prior written consent to an assignment of this Lease or a subletting of all or part of the Demised Premises.

U. Tenant will provide access to the Owner, its agents servants and employees, upon reasonable notice, except in the case of an emergency (which shall be determined solely by Owner), when such notice shall not be required.

\re\1816NBE3.301 25

V.   In the last six (6) months of the term hereof, Owner shall be entitled to place a "For Rent" or "For Sale" sign in the window of the Demised Premises

W.   Wherever in this Lease, Owner's consent, is required, except where otherwise expressly set forth, such consent may be granted or withheld in Owner's sole and arbitrary discretion.

X.   If more than one person executes or otherwise assumes or becomes liable under this Lease, the obligations of Tenant shall be the joint and several obligations of each of them.

Y.   This lease shall constitute the entire agreement of the parties hereto with respect to the letting of the Demised Premises.   All prior agreements between the parties, whether w       oral, are merged herein and shall be of no further force and effect.   This Lease cannot be changed, modified, or discharged orally but only by an agreement in writing signed by both parties hereto.

Z.   Tenant covenants and agrees that at all times it will comply with all reasonable rules and regulations established by Owner.

852 EIGHTH, LLC

By: _____
    Edward A. Friedman, Member

Portofindough LLC,

By: _____
    Medhat Ahmed, as member

\re\1816NBE3.301 26

**Exhibit A**

**Floor Plan**

\re\1816NBE3.301 27

## Floor Plan

### 852 EIGHTH AVENUE, NEW YORK, NY 10019



## Exhibit B1 & B2

## Exhibit ~~B1~~ - Lease Commencement Letter

852 Eighth LLC, AS OWNER,

AND

~~Portofindough LLC, AS TENANT~~

Date: July 1,    2021

Portofindough LLC.
852 Eight Avenue
New York, NY

Re: Lease ("Lease") dated July 1,
, 2021, between 852 EIGHTH, LLC, as
Owner and Portofindough LLC,
as Tenant for the leasing of
rentable place located in the
building known as 852 Eighth
Avenue, New York, New York

Gentlemen:

All capitalized terms used herein shall have the meanings set forth in the Lease.

Reference is made to Article 41 of the Rider to Lease.

We are writing to acknowledge and confirm the Commencement Date (as such term is defined in Article 41 of the Lease) under the Lease is _____July 1_, 2021._  The Expiration Date (as such term is defined in Article 41 of the Lease) of the Lease is June 30, 2033_____.

Please sign where indicated on the bottom left-hand corner of this letter to indicate your assent to the foregoing and deliver a fully-executed duplicate original of this letter to the undersigned within Ten (10) days of the date hereof.

\re\1816NBE3.301 28

Owner:
852 EIGHTH, LLC,

By: _____ , as member

ACCEPTED AND AGREED TO:
Tenant:
Portofindough LLC

By: _____

Owner:
852 Eighth, LLC,

_____
Edward A. Friedman,
Member

\re\1816NBE3.301 29

## Exhibit B2- RENT COMMENCEMENT DATE CERTIFICATE

852 Eighth LLC, AS OWNER,

AND

Portofindough LLC, AS TENANT

Date:                    2021

Portofindough LLC.
852 Eight Avenue
New York, NY

Re: Lease ("Lease") dated
, 2021, between 852 EIGHTH, LLC, as
Owner and Portofindough LLC,
as Tenant for the leasing of
rentable place located in the
building known as 852 Eighth
Avenue, New York, New York

Gentlemen:

All capitalized terms used herein shall have the meanings set forth in the Lease.

Reference is made to Article 41 of the Rider to Lease.

We are writing to acknowledge and confirm that you have opened for business on _____, or four (4) months have expired since the Lease Commencement Date. The Rent Commencement Date (as such term is defined in Article 41 of the Lease) under the Lease is _____.

Please sign where indicated on the bottom left-hand corner of this letter to indicate your assent to the foregoing and deliver a fully-executed duplicate original of this letter to the undersigned within Ten (10) days of the date hereof.

Owner:

\re\1816NBE3.301 30

852 EIGHTH, LLC,

By: _____, as member


ACCEPTED AND AGREED TO:
Tenant:
Portofindough LLC

By: _____


\re\1816NBE3.301 31

EXHIBIT C

SUBSTITUTE GOOD GUY GUARANTY

THIS GUARANTY is made as of _____, by the undersigned (**"Guarantor"**), to and with 852 EIGHTH LLC, (**"Owner"**).

**W I T N E S S E T H:**

WHEREAS, Owner has consented, executed and delivered its consent to an assignment ("Assignment") by Portofindough LLC of its lease for Premises of the store located at 852 Eighth Avenue, New York, New York dated       , 2021 to        ; said assignment dated            ,    which premises are more particularly described in the Lease (the **"Premises"**); and

WHEREAS, Owner has advised Guarantor that it will not consent to such Assignment unless certain obligations under the Lease as set forth herein are guaranteed by Guarantor and Guarantor has agreed to make such guaranty in consideration of Owner's execution and delivery of the assignment; and

WHEREAS, Guarantor is a principal of Tenant; and

WHEREAS, The capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Lease.

NOW, THEREFORE, in order to induce Owner to consent to the Assignment, Guarantor agrees as follows:

A.   Guarantor hereby unconditionally and irrevocably guarantees to Owner: the due and punctual payment in full (and not merely the collectability) of all Base Rent pursuant to Article 41 of the Lease and additional rents set forth in Article 42 of the Lease. "Additional Rents".

B.   Guarantor expressly agrees that Owner may, in its sole and absolute discretion, without notice to or further assent of Guarantor and without in any way releasing, affecting or impairing the obligations and liabilities of Guarantor hereunder: (i) waive compliance with, or any default under, or grant any other indulgences with respect to, the Lease; (ii) by agreement between Tenant and Owner, modify, amend or change any provisions of the Lease; (iii) grant extensions or renewals of the Lease and/or affect any release, compromise or settlement in

\re\1816NBE3.301 32

connection therewith; (iv) make advances for the purpose of performing any term or covenant contained in the Lease, with respect to which Tenant shall be in default and to the extent provided in the Lease; (v) assign or otherwise transfer its interest in the Premises, or in this Guaranty or any interest therein or herein; (vi) consent to an assignment, conveyance, extinguishment or other transfer of all or any part of the interest of Tenant in the Lease, and (vii) deal in all respects with Tenant as if this Guaranty were not in effect.

C.     The liability of Guarantor under this Guaranty shall be primary, direct and immediate and not conditioned or contingent upon pursuit by Owner of any remedies it may have against Tenant with respect to the Lease, whether pursuant to the terms thereof or by law, or dependent upon the validity or enforceability of the Lease. Without limiting the generality of the foregoing, Owner shall not be required to make any demand on Tenant, apply the Security Deposit being held by Owner on behalf of Tenant or otherwise pursue or exhaust its remedies against Tenant before, simultaneously with or after enforcing its rights and remedies hereunder against Guarantor. Any one or more successive and/or concurrent actions may be brought hereon against Guarantor either in the same action, if any, brought against Tenant, or in separate actions, as often as Owner, in its sole discretion may deem advisable. Guarantor agrees that Owner may apply the Security Deposit being held by Owner under the Lease to any default of Tenant as Owner determines in its sole discretion.

D.     The liability of Guarantor hereunder shall in no way be affected by: (i) the release or discharge of Tenant in any creditors', receivership, bankruptcy or other proceedings; (ii) the impairment, limitation or modification of the liability of the Tenant or the estate of the Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's said liability under the Lease, resulting from the operation of any present or future provision of the federal Bankruptcy Code; (iii) the rejection or disaffirmance of the Lease in any such proceedings; (iv) the assignment or transfer of the Lease by Tenant, except as provided in this Guaranty; (v) any disability or other defense of Tenant; or (vi) the cessation from any cause whatsoever of the liability of Tenant.

E.     This Guaranty shall remain in effect until the later of (i) One Hundred and Eighty (180) days after Tenant has delivered to Owner a written notice of the Surrender Date (as hereinafter defined) or (ii) the date that Tenant delivers to Owner a duly executed and acknowledged Surrender Declaration (the **"Surrender Declaration"**) substantially in the form annexed hereto as Exhibit "C1", delivers to Owner or its authorized agent all keys to the Premises and delivers possession of the Premises to Owner  or its authorized agent free and clear of all

\re\1816NBE3.301 33

liens, leases, tenancies and rights of occupancy and otherwise in the condition the Premises are required to be in on the Expiration Date (such date that Owner actually receives the Surrender Declaration, all keys to the Premises and possession of the Premises in such condition, shall be known as the **"Surrender Date"**). Upon the later of either such events, Guarantor shall be released and discharged from all liability with respect to any obligations of Tenant under the Lease arising thereafter. Notwithstanding the foregoing and subject to Paragraph L hereof, Guarantor shall continue to remain liable pursuant to the terms of this Guaranty for all obligations of Tenant for Base Rent or Additional Rents under the Lease which arose or accrued on or prior to the Surrender Date.

F. Guarantor hereby expressly waives for itself: (i) presentment and demand for payment and protest of non-payment; (ii) notice of acceptance of this Guaranty and of presentment, demand and protest; (iii) demand for observance or performance of, or enforcement of, any terms or provisions of this Guaranty or the Lease; and (iv) all other notices and demands otherwise required by law which Guarantor may lawfully waive. Guarantor also waives trial by jury in any action brought on or with respect to this Guaranty and agrees that in the event this Guaranty shall be enforced by suit or otherwise, Guarantor will reimburse Owner, upon demand, for all reasonable expenses incurred in connection therewith, including, without limitation, reasonable attorneys' fees and disbursements incurred on account thereof.

G. If Guarantor shall advance any sums to Tenant or its successors or assigns or if Tenant shall hereafter become indebted to Guarantor, such sums and indebtedness shall be subordinate in all respects to the amounts then or thereafter due and owing to Owner under the Lease.

H. Nothing herein contained shall be construed to give Guarantor any right of subrogation in and to Owner's rights under or interest in the Lease until all amounts owing to Owner under the Lease and the Lease have been paid in full.

I. Every notice, approval, consent or other communication authorized or required by this Guaranty (**"Notice"**) shall not be effective unless served in writing and sent by United States registered or certified mail, return receipt requested, or via overnight courier directed, if to Guarantor, at the address set forth for Tenant in the Lease or if to Owner, at the address set forth for Owner in the Lease, with a copy to Arthur J. Panoff, Danow McMullan & Panoff, P.C. 275 Madison Ave, Suite 1711, New York, NY 10016, or such other address or such other agent as either party may designate by notice from time to time in the manner aforesaid. Such Notice shall be deemed given upon receipt. In the event of refusal by the addressee to accept such

\re\1816NBE3.301 34

Notice, such Notice shall be deemed given upon the first tender of such Notice to the addressee.

J. All rights and remedies afforded to Owner by reason of this Guaranty, and the Lease, or by law, are separate and cumulative and the exercise of one shall not in any way limit or prejudice the exercise of any other such rights or remedies. No delay or omission by Owner in exercising any such right or remedy shall operate as a waiver thereof. No waiver or any rights and remedies hereunder, and no modification or amendment hereof, shall be deemed made by Owner or Guarantor unless in writing and duly signed by Owner and Guarantor. Any such written waiver shall apply only to the particular instance specified therein and shall not impair the further exercise of such right or remedy or of any other right or remedy of Owner or Guarantor, and no single or partial exercise of any right or remedy hereunder shall preclude other or further exercise thereof or any other right or remedy.

K. Guarantor's obligations hereunder shall include the obligation to reimburse Owner for any unamortized brokerage commissions due as a result of an early termination of the Lease as a result of the early surrender of the Premises or any other Tenant default under the Lease.

L. [Intentionally Omitted]

M. Guarantor acknowledges and agrees that it shall be deemed in default under this Guaranty if at any time during the duration of this Guaranty any of the following shall occur:

a. If, after notice to Guarantor of a default under the Lease, Guarantor shall fail to perform or cause the performance of Tenant's obligations under the Lease, or if Guarantor shall otherwise default in the performance of its obligations under this Guaranty and such default shall continue for ten (10) days after Owner notifies Guarantor thereof; or

b. If any of the representations made by Guarantor in this Guaranty shall be untrue in any material respect.

N. This Guaranty shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be wholly performed within the State of New York. In any action brought under or arising out of this Guaranty, the prevailing party in any litigation shall be entitled to recover from the other the reasonable attorneys' fees and court costs. The fees recoverable, as provided above, shall include fees incurred on appeal and any other post-judgment proceeding. Guarantor hereby consents to the jurisdiction of any competent court within the State of New

\re\1816NBE3.301 35

York, including, without limitation, Federal courts of the United States. Guarantor hereby consents for service of process or other legal summons by any means authorized by New York law or by mailing a copy thereof by certified mail, return receipt requested to Guarantor at Guarantor's address set forth above. Such mailing shall be deemed personal service and shall be legal and binding upon Guarantor in any such action or proceeding.

O.   This Guaranty shall inure to the benefit of, and shall be enforceable by, Owner and its successors and assigns as owners of the Owner's interest in the Lease, and shall be binding upon, and enforceable against, Guarantor.   As used in this Guaranty, the term **"Owner"** shall be deemed to include any assignee of Owner's interest in the Lease and this Guaranty.

P.   Notwithstanding anything to the contrary contained herein, the representations, warranties, covenants and agreements made by each of the parties comprising Guarantor herein, and the liability of such parties hereunder, are joint and several.

Q.   Guarantor warrants and represents to Owner that this Guaranty has been voluntarily, knowingly and competently entered into by Guarantor and that this Guaranty represents the valid and legally binding obligation of Guarantor and is fully enforceable against Guarantor in accordance with its terms.

R.   In the event that Tenant assigns the Lease in accordance with the terms thereof, Guarantor shall have the right, at Guarantor's option, upon five (5) days advance notice to Owner, to substitute the principal or principals of the assignee as a new guarantor or guarantors, provided such substitute guarantor has a net worth excluding any residence of $2,000,000.00. Upon Guarantor's delivery to Owner of a new guaranty substantially similar to this Guaranty, which has been executed by such new guarantor, Guarantor shall be released of all obligations and liabilities under this Guaranty thereafter accruing.

S.   This Guaranty may be executed in counterparts, each of which shall be deemed an original and together, shall constitute one and the same instrument.

\re\1816NBE3.301 36

IN WITNESS WHEREOF, Guarantor has duly executed this
Guaranty as of the day and year first above written.

GUARANTOR:

By: _____
Name: *Medhat Ahmed*
Title *owner*
Address: 51 Davison Ave
E Rock NY
11518

STATE OF NEW YORK      )
                       ss.:
COUNTY OF NEW YORK     )

On the *28* day of *June* in the
year *2021* before me, the undersigned, personally appeared
*Michael Ahmed*, personally known
to me or proved to me on the basis of satisfactory evidence to
be the individual**(s)** whose name**(s)** is **(are)** subscribed to the
within instrument and acknowledged to me that **he/she/they**
executed the same in **his/her/their** capacity**(ies)**, and that by
**his/her/their** signature**(s)** on the instrument, the individual**(s)**,
or the person upon behalf of which the individual**(s)** acted,
executed the instrument.

_____
Notary Public

ROBERT A. GLICK
Notary Public, State of New York
No. 02GL6338281
Qualified in Nassau County
Commission Expires March 7, 20__*24*

\re\1816NBE3.301 37

EXHIBIT "C1" TO GOOD GUY GUARANTY

SURRENDER DECLARATION

SURRENDER DECLARATION dated this ___ day of _____, xxxxx,  ,By_____ having an office at _____ (hereinafter referred to as **"Tenant"**).

W I T N E S S E T H:

WHEREAS, 852 EIGHTH LLC(**"Owner"**) and Tenant heretofore entered into a certain written lease (the **"Lease"**) dated ____, 2021, wherein and whereby Owner leased to Tenant and Tenant hired from Owner certain office premises (the **"Premises"**) located at 852 EIGHTH AVENUE, New York, New York as more fully described in the Lease, for a term scheduled to terminate following the commencement of the Lease, at the rental and additional rental and upon the covenants, conditions, provisions and agreements contained in such Lease; and

WHEREAS, the Lease was assigned to _____ on _____ and hereby, _____ is now the Tenant; and

WHEREAS, Tenant desires to surrender the Premises effective as of the date this Declaration and all keys to the Premises are delivered to Owner (hereinafter referred to as the **"Surrender Date"**).

NOW THEREFORE, in consideration of the premises, Tenant hereby declares, covenants and agrees as follows:

(1) Effective as of the Surrender Date, Tenant hereby surrenders to Owner all of Tenant's right, title and interest in and to the Premises and the Lease, together with all alterations, installations, additions and improvements in and to said Premises to the intent and purpose that the estate of Tenant in and to the Premises shall be wholly extinguished as of the Surrender Date.

(2) Tenant hereby warrants and represents to Owner that nothing has been done or suffered by Tenant whereby the Lease or the estate of Tenant in and to said Premises or any part thereof, have been encumbered in any way whatsoever; that Tenant has good right to surrender the same; that Tenant has surrendered the Premises as required by the Lease; and that no one other than Tenant has acquired through or under Tenant any right title or interest in and to the Lease or the term and estate thereby granted or in and to all or any part of the Premises covered by the Lease, including without limitation, all alterations, installations, additions and improvements therein (described in paragraph (1) hereof).

\re\1816NBE3.301 38

(3) Tenant further warrants and represents to Owner that, other than as set forth in the Lease, it has not dealt with any real estate agent or broker in connection with this Declaration and/or the Premises, that this Declaration was not brought about or procured through the use or instrumentality of any agent or broker. Tenant covenants and agrees to indemnify and hold Owner harmless from and against any and all claims for commissions and other compensation made by any agent or agents and/or any broker or brokers based on any dealings between Tenant and any agent or agents and/or broker or brokers in connection with the Premises, together with all costs and expenses incurred by Owner in resisting such claims (including, without limitation, attorneys' fees).

(4) The delivery of this Surrender Declaration to Owner shall not affect any liability of Tenant under the Lease and should not be construed to diminish, limit or otherwise reduce any liability that Tenant would otherwise have under the Lease if this Surrender Declaration was never delivered to Owner.

(5) The covenants, conditions, provisions and agreements contained in this Declaration shall bind Tenant and inure to the benefit of the Owner, and their respective legal representatives, successors and assigns.


IN WITNESS WHEREOF, the Tenant has hereto executed this Declaration as of the day and year first above written.


Tenant: _____


By: _____


\re\1816NBE3.301 39

STATE OF NEW YORK     )
                                          ss.:
COUNTY OF NEW YORK       )

     On the _____ day of _____ in the
year _____ before me, the undersigned, personally appeared
_____ , personally known
to me or proved to me on the basis of satisfactory evidence to
be the individual**(s)** whose name**(s)** is **(are)** subscribed to the
within instrument and acknowledged to me that **he/she/they**
executed the same in **his/her/their** capacity**(ies),** and that by
**his/her/their** signature**(s)** on the instrument, the individual**(s),**
or the person upon behalf of which the individual**(s)** acted,
executed the instrument.


                                        Notary Public


\re\1816NBE3.301 40

GOOD GUY GUARANTY


THIS GUARANTY is made as of July 1, 2021, by Medhat Ahmed undersigned ("Guarantor"), to and with 852 EIGHTH, LLC, ("Owner") .

## W I T N E S S E T H:

As a condition to entering into the lease dated as of July 1, 2021, (the "Lease") by and between 852 Eighth LLC, as Owner and Portofindough LLC, as Tenant, for the Ground Floor and Portion of the Basement in the Building commonly known as 852 Eighth Avenue, New York, NY ("Premises"), Owner has advised Tenant it will not so enter into the Lease unless the undersigned guarantees the Lease in accordance with the terms of this Guaranty, and Guarantor has agreed to make such guaranty in consideration of Owner's execution and delivery of the Lease. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Lease.

NOW, THEREFORE, Guarantor agrees as follows:

A. Guarantor hereby unconditionally and irrevocably guarantees to Owner: the due and punctual payment in full (and not merely the collectability) of all Base Rent pursuant to Article 41 of the Lease and additional rents set forth in Article 42 of the Lease. "Additional Rents".

B. Guarantor expressly agrees that Owner may, in its sole and absolute discretion, without notice to or further assent of Guarantor and without in any way releasing, affecting or impairing the obligations and liabilities of Guarantor hereunder: (i) waive compliance with, or any default under, or grant any other indulgences with respect to, the Lease; (ii) by agreement between Tenant and Owner, modify, amend or change any provisions of the Lease; (iii) grant extensions or renewals of the Lease and/or affect any release, compromise or settlement in connection therewith; (iv) make advances for the purpose of performing any term or covenant contained in the Lease, with respect to which Tenant shall be in default and to the extent provided in the Lease; (v) assign or otherwise transfer its interest in the Premises, or in this Guaranty or any interest therein or herein; (vi) consent to an assignment, conveyance, extinguishment or other transfer of all or any part of the interest of Tenant in the Lease, and (vii) deal in all respects with Tenant as if this Guaranty were not in effect.

C. The liability of Guarantor under this Guaranty shall be primary, direct and immediate and not conditioned or

\re\1816NBE3.301 41

contingent upon pursuit by Owner of any remedies it may have
against Tenant with respect to the Lease, whether pursuant to
the terms thereof or by law, or dependent upon the validity or
enforceability of the Lease. Without limiting the generality of
the foregoing, Owner shall not be required to make any demand on
Tenant, apply the Security Deposit being held by Owner on behalf
of Tenant or otherwise pursue or exhaust its remedies against
Tenant before, simultaneously with or after enforcing its rights
and remedies hereunder against Guarantor. Any one or more
successive and/or concurrent actions may be brought hereon
against Guarantor either in the same action, if any, brought
against Tenant, or in separate actions, as often as Owner, in
its sole discretion may deem advisable. Guarantor agrees that
Owner may apply the Security Deposit being held by Owner under
the Lease to any default of Tenant as Owner determines in its
sole discretion.

D.   The liability of Guarantor hereunder shall in no way
be affected by: (i) the release or discharge of Tenant in any
creditors', receivership, bankruptcy or other proceedings; (ii)
the impairment, limitation or modification of the liability of
the Tenant or the estate of the Tenant in bankruptcy, or of any
remedy for the enforcement of Tenant's said liability under the
Lease, resulting from the operation of any present or future
provision of the federal Bankruptcy Code; (iii) the rejection or
disaffirmance of the Lease in any such proceedings; (iv) the
assignment or transfer of the Lease by Tenant, except as
provided in this Guaranty; (v) any disability or other defense
of Tenant; or (vi) the cessation from any cause whatsoever of
the liability of Tenant.

E.   This Guaranty shall remain in effect until the later
of (i) One Hundred and Eighty (180) days after Tenant has
delivered to Owner a written notice of the Surrender Date (as
hereinafter defined) or (ii) the date that Tenant delivers to
Owner a duly executed and acknowledged Surrender Declaration
(the **"Surrender Declaration"**) substantially in the form annexed
hereto as Exhibit "1", delivers to Owner or its authorized agent
all keys to the Premises and delivers possession of the Premises
to Owner or its authorized agent free and clear of all liens,
leases, tenancies and rights of occupancy and otherwise in the
condition the Premises are required to be in on the Expiration
Date (such date that Owner actually receives the Surrender
Declaration, all keys to the Premises and possession of the
Premises in such condition, shall be known as the **"Surrender
Date"**). Upon the later of either such events, Guarantor shall
be released and discharged from all liability with respect to
any obligations of Tenant under the Lease arising thereafter.
Notwithstanding the foregoing and subject to Paragraph L hereof,
Guarantor shall continue to remain liable pursuant to the terms
of this Guaranty for all obligations of Tenant for Base Rent or
Additional Rents under the Lease which arose or accrued on or

\re\1816NBE3.301 42

prior to the Surrender Date.

F.    Guarantor hereby expressly waives for itself: (i)
presentment and demand for payment and protest of non-payment;
(ii) notice of acceptance of this Guaranty and of presentment,
demand and protest; (iii) demand for observance or performance
of, or enforcement of, any terms or provisions of this Guaranty
or the Lease; and (iv) all other notices and demands otherwise
required by law which Guarantor may lawfully waive. Guarantor
also waives trial by jury in any action brought on or with
respect to this Guaranty and agrees that in the event this
Guaranty shall be enforced by suit or otherwise, Guarantor will
reimburse Owner, upon demand, for all reasonable expenses
incurred in connection therewith, including, without limitation,
reasonable attorneys' fees and disbursements incurred on account
thereof.

G.    If Guarantor shall advance any sums to Tenant or its
successors or assigns or if Tenant shall hereafter become
indebted to Guarantor, such sums and indebtedness shall be
subordinate in all respects to the amounts then or thereafter
due and owing to Owner under the Lease.

H.    Nothing herein contained shall be construed to give
Guarantor any right of subrogation in and to Owner's rights
under or interest in the Lease until all amounts owing to Owner
under the Lease and the Lease have been paid in full.

I.    Every notice, approval, consent or other communication
authorized or required by this Guaranty (**"Notice"**) shall not be
effective unless served in writing and sent by United States
registered or certified mail, return receipt requested, or via
overnight courier directed, if to Guarantor, at the address set
forth for Tenant in the Lease or if to Owner, at the address set
forth for Owner in the Lease, with a copy to Arthur J. Panoff,
Danow McMullan & Panoff, P.C. 275 Madison Ave, Suite 1711, New
York, NY 10016,   or such other address or such other agent as
either party may designate by notice from time to time in the
manner aforesaid. Such Notice shall be deemed given upon
receipt. In the event of refusal by the addressee to accept such
Notice, such Notice shall be deemed given upon the first tender
of such Notice to the addressee.

J.    All rights and remedies afforded to Owner by reason of
this Guaranty, and the Lease, or by law, are separate and
cumulative and the exercise of one shall not in any way limit or
prejudice the exercise of any other such rights or remedies. No
delay or omission by Owner in exercising any such right or
remedy shall operate as a waiver thereof. No waiver or any
rights and remedies hereunder, and no modification or amendment
hereof, shall be deemed made by Owner or Guarantor unless in
writing and duly signed by Owner and Guarantor. Any such written

\re\1816NBE3.301 43

waiver shall apply only to the particular instance specified therein and shall not impair the further exercise of such right or remedy or of any other right or remedy of Owner or Guarantor, and no single or partial exercise of any right or remedy hereunder shall preclude other or further exercise thereof or any other right or remedy.

K.  Guarantor's obligations hereunder shall include the obligation to reimburse Owner for any unamortized brokerage commissions due as a result of an early termination of the Lease as a result of the early surrender of the Premises or any other Tenant default under the Lease.

L.  [Intentionally Omitted]

M.  Guarantor acknowledges and agrees that it shall be deemed in default under this Guaranty if at any time during the duration of this Guaranty any of the following shall occur:

a.  If, after notice to Guarantor of a default under the Lease, Guarantor shall fail to perform or cause the performance of Tenant's obligations under the Lease, or if Guarantor shall otherwise default in the performance of its obligations under this Guaranty and such default shall continue for ten (10) days after Owner notifies Guarantor thereof; or

b.  If any of the representations made by Guarantor in this Guaranty shall be untrue in any material respect.

N.  This Guaranty shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be wholly performed within the State of New York. In any action brought under or arising out of this Guaranty, the prevailing party in any litigation shall be entitled to recover from the other the reasonable attorneys' fees and court costs.  The fees recoverable, as provided above, shall include fees incurred on appeal and any other post-judgment proceeding.  Guarantor hereby consents to the jurisdiction of any competent court within the State of New York, including, without limitation, Federal courts of the United States. Guarantor hereby consents for service of process or other legal summons by any means authorized by New York law or by mailing a copy thereof by certified mail, return receipt requested to Guarantor at Guarantor's address set forth above. Such mailing shall be deemed personal service and shall be legal and binding upon Guarantor in any such action or proceeding.

O.  This Guaranty shall inure to the benefit of, and shall be enforceable by, Owner and its successors and assigns as owners of the Owner's interest in the Lease, and shall be binding upon, and enforceable against, Guarantor.  As used in

\re\1816NBE3.301 44

this Guaranty, the term **"Owner"** shall be deemed to include any assignee of Owner's interest in the Lease and this Guaranty.


P.   Notwithstanding anything to the contrary contained herein, the representations, warranties, covenants and agreements made by each of the parties comprising Guarantor herein, and the liability of such parties hereunder, are joint and several.

Q.   Guarantor warrants and represents to Owner that this Guaranty has been voluntarily, knowingly and competently entered into by Guarantor and that this Guaranty represents the valid and legally binding obligation of Guarantor and is fully enforceable against Guarantor in accordance with its terms.

R.   In the event that Tenant assigns the Lease in accordance with the terms thereof, Guarantor shall have the right, at Guarantor's option, upon five (5) days advance notice to Owner, to substitute the principal or principals of the assignee as a new guarantor or guarantors, provided such substitute guarantor has a net worth excluding any residence of $2,000,000.00. Upon Guarantor's delivery to Owner of a new guaranty substantially similar to this Guaranty, which has been executed by such new guarantor, Guarantor shall be released of all obligations and liabilities under this Guaranty thereafter accruing.

S.   This Guaranty may be executed in counterparts, each of which shall be deemed an original and together, shall constitute one and the same instrument.

\re\1816NBE3.301 45

IN WITNESS WHEREOF, Guarantor has duly executed this
Guaranty as of the day and year first above written.

GUARANTOR:

_____

Name: Medhat Ahmed

Address: 51 Davison Avenue
East Rockaway, NY 11518


STATE OF NEW YORK        )
                          ss.:
COUNTY OF                )

On the 28 day of June in the
year 2021 before me, the undersigned, personally appeared Medhat
Ahmed, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that
**he** executed the same in **his** capacity, and that by **his** signature
on the instrument, the individual, or the person upon behalf of
which the individual acted, executed the instrument.

_____
Notary Public

ROBERT A. GLICK
Notary Public, State of New York
No. 02GL6338281
Qualified in Nassau County
Commission Expires March 7, 20 24

\re\1816NBE3.301 46

### Exhibit 1 to Good-Guy Guaranty

SURRENDER DECLARATION

SURRENDER DECLARATION dated this ___ day of _____, Portofindough LLC, having an office at _____ (hereinafter referred to as **"Tenant"**).

W I T N E S S E T H:

WHEREAS, 852 EIGHTH LLC(**"Owner"**) and Tenant heretofore entered into a certain written lease (the **"Lease"**) dated ____, 2021, wherein and whereby Owner leased to Tenant and Tenant hired from Owner certain office premises (the **"Premises"**) located at 852 EIGHTH AVENUE, New York, New York as more fully described in the Lease, for a term scheduled to terminate following the commencement of the Lease, at the rental and additional rental and upon the covenants, conditions, provisions and agreements contained in such Lease; and

WHEREAS, Tenant desires to surrender the Premises effective as of the date this Declaration and all keys to the Premises are delivered to Owner (hereinafter referred to as the **"Surrender Date"**).

NOW THEREFORE, in consideration of the premises, Tenant hereby declares, covenants and agrees as follows:

(1) Effective as of the Surrender Date, Tenant hereby surrenders to Owner all of Tenant's right, title and interest in and to the Premises and the Lease, together with all alterations, installations, additions and improvements in and to said Premises to the intent and purpose that the estate of Tenant in and to the Premises shall be wholly extinguished as of the Surrender Date.

(2) Tenant hereby warrants and represents to Owner that nothing has been done or suffered by Tenant whereby the Lease or the estate of Tenant in and to said Premises or any part thereof, have been encumbered in any way whatsoever; that Tenant has good right to surrender the same; that Tenant has surrendered the Premises as required by the Lease; and that no one other than Tenant has acquired through or under Tenant any right title or interest in and to the Lease or the term and estate thereby granted or in and to all or any part of the Premises covered by the Lease, including without limitation, all alterations, installations, additions and improvements therein (described in paragraph (1) hereof).

\re\1816NBE3.301 47

(3) Tenant further warrants and represents to Owner that, other than as set forth in the Lease, it has not dealt with any real estate agent or broker in connection with this Declaration and/or the Premises, that this Declaration was not brought about or procured through the use or instrumentality of any agent or broker. Tenant covenants and agrees to indemnify and hold Owner harmless from and against any and all claims for commissions and other compensation made by any agent or agents and/or any broker or brokers based on any dealings between Tenant and any agent or agents and/or broker or brokers in connection with the Premises, together with all costs and expenses incurred by Owner in resisting such claims (including, without limitation, attorneys' fees).

(4) The delivery of this Surrender Declaration to Owner shall not affect any liability of Tenant under the Lease and should not be construed to diminish, limit or otherwise reduce any liability that Tenant would otherwise have under the Lease if this Surrender Declaration was never delivered to Owner.

(5) The covenants, conditions, provisions and agreements contained in this Declaration shall bind Tenant and inure to the benefit of the Owner, and their respective legal representatives, successors and assigns.


IN WITNESS WHEREOF, the Tenant has hereto executed this Declaration as of the day and year first above written.


Tenant: _____

By: _____


\re\1816NBE3.301 48

STATE OF NEW YORK      )
                                      ss.:
COUNTY OF NEW YORK       )

    On the _____ day of _____ in the
year _____ before me, the undersigned, personally appeared
_____, personally known
to me or proved to me on the basis of satisfactory evidence to
be the individual**(s)** whose name**(s)** is **(are)** subscribed to the
within instrument and acknowledged to me that **he/she/they**
executed the same in **his/her/their** capacity**(ies)**, and that by
**his/her/their** signature**(s)** on the instrument, the individual**(s)**,
or the person upon behalf of which the individual**(s)** acted,
executed the instrument.


                                   Notary Public

ROBERT A. GLICK
Notary Public, State of New York
No. 02GL6338261
Qualified in Nassau County
Commission Expires March 7, 20___

\re\1816NBE3.301 49