UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>Portofindough LLC,<br><br>Debtor. | FOR PUBLICATION<br><br>Case No. 23-11695 (MG)<br><br>Chapter 11 |

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART MOTION TO LIFT STAY**

*A P P E A R A N C E S :*

BERGER, FISCHOFF, SHUMER, WEXLER & GOODMAN LLC
*Attorneys for the Debtor*
6901 Jericho Turnpike Suite 230
Syosset, NY 11791
By:    Gary C. Fischoff, Esq.

ROSENBERG & ESTIS, P.C.
*Attorneys for 852 Eighth LLC*
733 Third Avenue Ste 14th Floor
New York, NY 10017
By:    John D Giampolo, Esq.

OFFICE OF THE UNITED STATES TRUSTEE, Region 2
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004
By:    Annie Wells, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion (the "Motion," ECF Doc. # 27) of 852 Eighth

LLC (the "Landlord") of Portofindough LLC (the "Debtor"), for (I) an order acknowledging

Debtor's lease of the nonresidential premises terminated prior to the Petition Date, and (A)

confirming the automatic stay does not apply to stay Landlord from recovering possession of the

nonresidential premises pursuant to 11 U.S.C. § 362(b)(10), or (B) modifying the automatic stay

pursuant to 11 U.S.C. § 362(d) to permit Landlord to recover possession of the nonresidential

premises; or, alternatively, (II) an order compelling rejection of the nonresidential lease to the

extent it is deemed unexpired as of the Petition Date; (III) an order compelling allowance and

payment of all unpaid post-petition rent, use and occupancy and/or other charges pursuant to 11

U.S.C. §§ 365(d)(3) and 503(b)(1); (IV) abandoning any interest of the Debtor in any personal

property left in the premises; (V) modifying the automatic stay to permit Landlord's application

of the security deposit; and (VI) waiving any stay period and providing for the terms of the order

granting this Motion to take effect immediately upon entry.  In support of this Motion, the

Landlord submitted the *Declaration of Maidad Rabina* (the "Rabina Declaration," ECF Doc. #

27-2.)  On December 18, 2023, the Debtor filed a response to the Motion (the "Response," ECF

Doc. #34.)  A hearing on the Motion was held on December 20, 2023.

For the reasons detailed below, the Court **GRANTS** the Motion in part.  The Court finds

that the automatic stay does not apply to the lease because it was terminated prepetition.  With

respect to the Landlord's request to lift the stay regarding the Security Deposit (defined below),

the stay is lifted to permit the Landlord pursuant to section 553(a) of the Bankruptcy Code to set

off the Security Deposit *against the prepetition rent arrears including use and occupancy* (but

not to post-petition arrears).

## I.    BACKGROUND

### A.    Procedural History

On July 1, 2021, the Debtor became a commercial tenant of the Landlord pursuant to a

written lease agreement and rider (the "Rider), between the Landlord, as landlord, and the

Debtor, as tenant (the "Original Lease").  (Motion ¶ 4.)  On May 2023, 2023, the Landlord and

Debtor signed a forbearance letter agreement ("Agreement," and collectively, with the Rider and

Original Lease, the "Lease"), modifying the Original Lease.  (*Id.*)  The Lease conferred a

2

possessory interest in a portion of ground floor and basement in the building located at 852

Eighth Avenue, New York, NY 10019 (the "Premises").  (*See* Rabina Declaration Ex. B, ECF

Doc. # 27-4.)  The Motion did not mention the term of the Lease, but the Original Lease states it

is for a term of 12 years.  (*See id.*)

On March 15, 2022, in breach of the Lease, Debtor caused a third-party contractor to file

a lien (the "Lien") against the Premises for work allegedly done for and at the direction of the

Debtor and for which Debtor failed to pay.  (Motion ¶ 6.)  The Landlord claims that in further

breach of the Lease, the Debtor failed to indemnify the Landlord for the Lien and foreclosure of

the same.  (*Id.*)

On July 12, 2023, the Landlord sent the Debtor a notice of default (the "Default Notice").

(*Id.* ¶ 8.)  On August 2, 2023, the Landlord sent the Debtor a notice of termination of lease (the

"Termination Notice").  (*Id.*)  The Landlord claims the Lease terminated and expired on August

11, 2023 (the "Termination Date") pursuant to the terms of the Lease.  (*Id.*)  The Landlord claims

the Debtor has been holding over in possession of the Premises ever since.  (*Id.* ¶ 9.)

On August 16, 2023, the Landlord commenced an eviction action (the "Eviction Action")

against the Debtor.  (*Id.* ¶ 10).  On October 24, 2023 (the "Petition Date"), the Debtor filed a

Chapter 11 petition in this Court.  (*See* ECF Doc. # 1.)  On the same day, the Eviction Action

was stayed by the filing of the petition.  (Motion ¶ 10.)  The Landlord currently a holds security

deposit (the "Security Deposit") in the amount of $115,000.00.  (Rabina Declaration ¶ 16.)  The

Landlord alleges that the Debtor owes no less than $120,149.52 for rent and/or use and

occupancy under the Lease for the period through and including the Petition Date (the

"Prepetition Arrears").  (Motion ¶ 13; *see* ECF Doc. # 27-6 (copy of the Lease ledger).)  The

3

Landlord further maintains that the Prepetition Arrears do not include the amount of the Lien against the Premises. (Motion at 3.)

### B.     Relief Requested

The Landlord argues that the automatic stay does not apply to the Lease because the Lease was terminated prior to the Petition Date. (Motion ¶¶ 20–34.) The Court agrees. Even if the automatic stay applied to the Lease, the Landlord argues that cause exists to grant relief from the automatic stay to allow ejectment of Debtor from the nonresidential Premises because the Debtor failed to pay post-petition rent and has no valid lease pursuant to sections 362(d)(1) and (d)(2) of the Bankruptcy Code.[1] (*Id.* ¶¶ 35–43.)

Alternatively, if the Lease is deemed unexpired as of the Petition Date, the Landlord argues that the Court should compel the Debtor to reject the Lease. (*Id.* ¶¶ 44–58.) The Landlord further argues that the Court should modify the automatic stay to permit application of the Security Deposit to arrears and any lease rejection damages. (*Id.* ¶ 63.) To the extent the Court is inclined to permit such application of the Security Deposit, the Landlord then requests the Court to declare the Debtor has abandoned the Debtor's remaining personal property at the Premises free and clear of any rights, liens or claims of third parties. (*Id.* ¶ 64.)

Regardless of whether the Court grants any of the other relief sought, the Landlord argues that the Court should compel payment of Landlord's claim for post-petition monthly rent at $26,000.00[2] (*Id.* ¶¶ 59–62.)

---

[1]     The Motion argues, in the alternative, if the Court determines that the automatic stay applies, it should be lifted because cause exists to grant relief from stay to allow ejectment of Debtor from the non-residential premises because the Debtor failed to pay post-petition rent. (Motion ¶¶ 35–43.)

[2]     Assuming the Debtor still had a Lease, a position rejected in this Opinion, the Debtor is required to timely perform all obligations under the Lease "arising from or after 60 days after the order for relief in a case under chapter 11 . . . under an unexpired lease of personal property . . . until such lease is assumed or rejected . . . , unless the court, after notice and a hearing and based on equities of the case, orders otherwise with respect to the obligations or timely performance thereof." 11 U.S.C. § 365(d)(5). Since the Petition Date was October 24, 2023,

### C.    Debtor's Response

The Debtor does not dispute that it has been unable to pay post-petition rent. (Response ¶ 1.) The Debtor states that revenues from the restaurant business have been disappointing, and it has been difficult meeting all of its post-petition obligations. (*Id.*)

The Debtor argues that the Motion should nonetheless be denied or adjourned to another date because the Motion was served on short notice. (Response ¶¶ 2, 5.) The Landlord served the Motion by mail on December 5, 2023. (*See* "Affidavit of Service," ECF Doc. # 33.) Under Local Rule 9006 and Rule 9006(f) of the Federal Rules of Bankruptcy Procedures, the earliest date the hearing could be held is December 22, 2023. (Response ¶ 5.) Therefore, the Debtor argues that the Court should deny the Motion. (*Id.*)

## II.    <u>LEGAL STANDARD</u>

At the start of a bankruptcy proceeding, an automatic stay is imposed on "any act to obtain" possession of or "control over" property of the bankruptcy estate. 11 U.S.C. § 362(a)(3). Section 541 of the Bankruptcy Code governs the creation of the bankruptcy estate and states that "all legal or equitable interests of the debtor in property" belong to the estate at the commencement of the case. 11 U.S.C. § 541(a)(1). There are a series of exceptions that follow this rule; most relevant for present purposes is section 541(b)(2), which provides that property of the estate does *not* include:

> Any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case.

---

section 365(d)(5) of the Bankruptcy Code would not have required payment of all post-petition obligations until December 23, 2023, a mere few days from now.

11 U.S.C. § 541(b)(2).

Collier notes that:

> Even though section 541 provides the framework for determining
> the scope of the debtor's estate and what property will be included
> in the estate, it does not provide any rules for determining whether
> the debtor has an interest in property in the first place. That gap is
> filled most of the time by nonbankruptcy law.

5 COLLIER ON BANKRUPTCY ¶ 541.03 (16th ed. 2022).

Because the Lease is governed by New York law, New York law fills in the gaps here.

Under New York law, it is unnecessary "for a landlord to move in the Bankruptcy Court to

vacate the automatic stay when the Debtor has possession under a lease that has been terminated

by the expiration of the stated term." *In re Neville*, 118 B.R. 14, 18 (Bankr. E.D.N.Y. 1990). A

landlord may do "whatever is necessary under state law" to gain possession of the formerly

leased property. *Id.* Section 362(b)(10) of the Bankruptcy Code further provides that the

automatic stay does *not* apply to "any act by a lessor to the debtor under a lease of nonresidential

real property that has terminated by the expiration of the stated term of the lease before the

commencement of or during a case under this title to obtain possession of such property." 11

U.S.C § 362(b)(10).

### III.   DISCUSSION

#### A.   The Effect of Short Notice

The hearing may be heard on December 20, 2023 despite that the Landlord failed to

provide three (3) additional days of notice pursuant to Rule 9006(f) of the Federal Rules of

Bankruptcy Procedure for service by mail.

Bankruptcy Rule 9006(f) provides that:

> Additional time after service by mail or under Rule 5(b)(2)(D) or (F)
> F.R.Civ.P.  When there is a right or requirement to act or undertake
> some proceedings within a prescribed period after being served and

> that service is by mail or under Rule 5(b)(2)(D) (leaving with the clerk) or (F) (other means consented to) F.R.Civ.P., three days are added after the prescribed period would otherwise expire under Rule 9006(a).

FED. R. BANKR. P. 9006(f).

The Debtor argues that the Motion should be denied in its entirety because the Landlord failed to give a sufficient notice and was 3 days short. (Response ¶ 5.) The Landlord served the Motion by mail on December 5, 2023. (*See* ECF Doc. # 33.) The Debtor responded to the Motion on December 18, 2023, two days before the scheduled hearing. Under these circumstances, the short notice had no prejudicial effect on the Debtor.

Accordingly, the Court rejects the Debtor's argument that the Motion should be denied because of insufficient notice.

### B.    The Automatic Stay Does Not Apply to the Lease

The automatic stay does not apply to the Lease because the Lease was terminated before the Petition Date.

The Landlord argues that section 362 (b)(10) applies not only when a lease expires by the end of its term but also in any scenario where the lease is deemed terminated or nonexistent under applicable non-bankruptcy law. (Motion ¶ 26.) Citing *In re Policy Realty Corp.*, 242 B.R. 121 (S.D.N.Y.1999), *In re Neville*, 118 B.R. 14 (Bankr. EDNY 1990), and *In re Truong*, 557 B.R. 326 (Bankr. D.N.J. 2016), the Landlord argues that courts have recognized that a lease may be terminated prepetition within the meaning of section 362(b)(10) by serving a notice of default and termination in accordance with the lease terms. (Motion ¶¶ 25-34 (citing *In re Policy Realty Corp.*, 242 B.R. at 128, which interprets 11 U.S.C. § 362(b)(10)).)

Section 541(b)(2) of the Bankruptcy Code provides that where the lease has been "terminated at the expiration of the stated term" prior to a petition date, there is an exception to

7

the general rule that all interests of a debtor at the commencement of the bankruptcy case

become part of the bankruptcy estate.  *See* 11 U.S.C § 541(b)(2).  It is well settled that "[t]he

language of Section 362(b)(10) clearly indicates that it is not necessary for a landlord to move in

the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under a lease of

nonresidential real property that has terminated by the expiration of the stated term of the lease

before the commencement of or during a case under this title [and] [t]he landlord may do

whatever is necessary and appropriate under state law to obtain possession of such property."  *In

re Neville*, 118 B.R. at 18 (citing 11 U.S.C. § 362(b)(10)) (internal citations omitted).

A contract automatically terminates upon the occurrence of an event "[i]f a clause in a

contract provides that the contract will end at the moment a particular designated event happens,

that clause creates a conditional limitation."  *In re St. Casimir Dev. Corp.*, 358 B.R. 24, 38

(S.D.N.Y. 2007).  A contract does not automatically terminate if it contains a "condition

subsequent."  *Id.* at 39 (stating that a condition subsequent exists "where a party has the option

either to terminate the contract upon the occurrence of an event or not to terminate—and where

the contract does not expire by its own limitation upon such occurrence").  A condition

subsequent exists if termination remains reversible or in the discretion of the counterparty, as

opposed to being automatic upon the occurrence of specific event.  *See id*.  If a condition

subsequent exists, the party seeking to terminate the contract must take some affirmative action

after the designated event occurs.  *See In re Velo Holdings Inc.*, 475 B.R. 367, 382 (Bankr.

S.D.N.Y. 2012).  Here, the Lease contains a conditional limitation that caused the Lease to

terminate automatically on August 11, 2023, following the passage of five days after service of

the Termination Notice.

Article 3 of the Lease provides, in relevant part, that:

> If an[y] mechanic's lien is filed against the demised premises, or the
> building of which the same forms a part, for work claimed to have
> been done for, or materials furnished to, Tenant, whether or not done
> pursuant to this article, the same shall be discharged by Tenant
> within 30 days thereafter, at Tenant's expense, by payment or filing
> a bond as permitted by law. (emphasis added).

(*See* Rabina Declaration Ex. B, ECF Doc. # 27–4.)

Article 45 of the Rider provides, with regard to Tenant's Initial Improvements (as defined

in the Lease), that

> Tenant shall not suffer or permit any liens, hypothecations or
> security interest to be granted in or filed against Tenant's Initial
> Improvements . . . Tenant's Initial Improvements shall be
> constructed and installed in full compliance with Tenant's
> obligations under this Lease, including, without limitation, the terms
> and provisions of Article 3 and 47 hereof."

(*See id.*)

Article 47(xi) of the Rider provides that

> Tenant shall indemnify and save Owner [Landlord] harmless from
> and against any and all bills for labor performed and equipment,
> fixtures and material furnished to Tenant and from and against any
> and all liens, bills or claims therefor or against the Demised
> Premises or the Building and from and against all losses, damages,
> costs, expenses, suits and claims whatsoever in connection with any
> such work." (emphasis added).

(*See id.*)

Article 17 of the Lease provides, in relevant part, that:

> If Tenant defaults in fulfilling any of the covenants of this lease
> other than the covenants for the payment of rent or additional rent
> … then, … upon Owner serving a written fifteen (15) day notice
> upon Tenant specifying the nature of said default, and upon the
> expiration of said fifteen (15) day period, and if Tenant shall not
> have diligently commenced curing such default within such fifteen
> (15) day period, and shall not thereafter with reasonable diligence
> and in good faith proceed to remedy or cure such default, then
> Owner may serve a written five (5) day notice of cancellation of this

9

> lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein fixed for the end and expiration of this lease and the term thereof.

(*See id.*)

The Court finds that the Lease terms are clear and unambiguous, and therefore will give effect to the plain meaning of the Lease's terms and provisions. By the plain meaning of it terms, Article 17 creates a conditional limitation such that the Lease terminated without further action necessary by the Landlord after the Landlord served the Debtor with (a) the fifteen (15) day notice of default and (b) the five (5) day notice of termination of Lease. (*See* Default Notice, ECF Doc. # 27–3 at Ex. B (citing Lease Art. 17).)

Here, the Landlord sent the Debtor the Default Notice on July 12, 2023, notifying the Debtor that he was in default of his obligations under the Lease in that he had (a) failed to discharge the Lien, and (b) failed to indemnify the landlord in the Foreclosure Action, and requiring that the Debtor cure the defaults set forth therein. (*See* Default Notice, ECF Doc. # 27-3 at Ex. B.) The Landlord then sent the Termination Notice on August 2, 2023, notifying the Debtor that the Landlord had elected to terminate the Lease effective as of August 11, 2023 due to the Debtor's failure to cure the defaults set forth in the July 12 Default Notice. (*See* Termination Notice, ECF Doc. # 27-3 at Ex. C.) Pursuant to the terms of Article 17 of the Lease, the Lease was terminated on August 11, 2023.

This bankrupty case was filed on October 24, 2023. The Lease was terminated prepetition within the meaning of section 362(b)(10). *See In re Policy Realty Corp.*, 242 B.R. at 127–128 (interpreting 11 U.S.C. § 362(b)(10).) The termination of the Lease foreclosed the Debtor's leasehold interest in the Premises without further action. *See In re Truong*, 557 B.R. at 334 (citing *Little v. Bright Holding Corp.*, 155 Misc.2d 686, 687–88, 589 N.Y.S.2d 722 (N.Y.

10

Civ. Ct. 1992) (stating that "a debtor-tenant at sufferance who refused to vacate the premises had

no interest which the stay could protect in bankruptcy") (internal citations omitted).

Accordingly, the automatic stay does not apply to the Lease because the Lease was

terminated before the Petition Date. The Landlord is free to pursue its state court Eviction

Action.

### C.    Cause Exists to Permit Application of Security Deposit to Setoff Prepetition Arrears

Cause exists to lift the automatic stay to permit the Landlord to set off the Prepetition

Arrears with the Security Deposit. The automatic stay applies to any setoff effort. *See* 11 U.S.C.

§ 362(a)(7) (stating that the automatic stay applies to "the setoff of any debt owing to the debtor

that arose **before** the commencement of the case.") (emphasis added); *see also In re Sweet N*

*Sour 7th Ave. Corp.*, 431 B.R. 63, 71 (Bankr. S.D.N.Y. 2010). "Bankruptcy courts have applied

section 553(setoff) to rent security deposits." *Id.* It is undisputed that the Debtor has not been

able to meet its rent obligations. "No less than $120,149.52 of Pre-petition Arrears are due and

owing from Debtor to Landlord for rent and/or use and occupancy under the Lease for the period

through and including the Petition Date." (Motion ¶ 13; *see* ECF Doc. # 27-6 at Ex. D. [3])

Therefore, cause exists to permit the Landlord to apply the Security Deposit to set off any

Prepetition Arrears.

---

[3]    Exhibit D is the Lease Ledger showing the details by date and amount of prepetition amounts due to the Landlord from the Debtor. The last entry was made on October 18, 2023, before the Petition Date on October 24, 2023, reflecting a balance due of $120,149,52.00  Since this balance due exceeds the amount of the Security Deposit ($115,000.00), the Landlord is entitled to set off the full amount of the Security Deposit. It will leave the Landlord with an unsecured prepetition claim for unpaid rent, use and occupancy, damages resulting from the Lien against the property, and any other prepetition amounts due the Landlord. The Landlord also has post-petition administrative expenses for use and occupancy and other items.

Accordingly, the automatic stay is lifted to permit the application of Security Deposit on

Prepetition Arrears.[4]

### IV.   CONCLUSION

For the foregoing reasons, the Court finds that the automatic stay does not apply to the

Lease.  The automatic stay is hereby lifted to permit the Landlord to set off any Prepetition

Arrears against the Security Deposit.

**IT IS SO ORDERED.**

Dated:    December 22, 2023
          New York, New York

                                        _Martin Glenn_
                                        MARTIN GLENN
                                        Chief United States Bankruptcy Judge

---

[4] Because the automatic stay does not apply to the terminated Lease, the Landlord is free to pursue its rights under the Lease in the Eviction Action.  The Landlord did not cite any bankruptcy law concerning ownership of fixtures and other property remaining in the premises upon terminations of the Lease.  The state court can determine ownership of that property.  This Court will not declare that the "the Debtor has abandoned the Debtor's remaining personal property at the Premises free and clear of any rights, liens or claims of third parties."  (Motion ¶ 64.)